701 A.2d 541

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Donald HARDCASTLE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 13, 1996.

Decided Oct. 1, 1997.

Reargument Denied Jan. 2, 1998.

452

Bernard L. Siegel, Philadelphia, for D. Hardcastle.

Catherine Marshall, Philadelphia and Robert A. Graci, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal from the denial of relief under the Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq.[1] We affirm.

In December of 1982, Donald Hardcastle was found guilty of two counts of first degree murder, burglary, and arson. As to both of the murder convictions the jury rendered a sentencing verdict of death. On direct appeal, this Court affirmed the judgment of sentence, 519 Pa. 236, 546 A.2d 1101 (1988), and the United States Supreme Court denied certiorari, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990).

1. At the time the order appealed from was entered, 42 Pa.C.S. § 9546(d) provided that "[a] final order under this subchapter in a case in which the death penalty has been imposed shall be directly appealable only to the Supreme Court pursuant to its rules."

Hardcastle then filed a pro se motion for post-conviction collateral relief. The court appointed counsel, who filed amended and supplemental motions. The Commonwealth filed a motion to dismiss. Following argument, the court denied post-conviction relief. The court subsequently denied a motion to vacate the order denying relief. This appeal followed.

■ The Appellant's first argument is that the common pleas court violated Pa.R.Crim.P. 1507(a) by dismissing the motion for post-conviction relief without having first given notice stating the reasons for the proposed dismissal and allowing the Appellant ten days to respond. Although we agree that the court did not follow the rule, no relief is necessary or warranted.

Pa.R.Crim.P. 1507(a) establishes that a motion for post-conviction relief may be disposed of without an evidentiary hearing if the judge, upon review of the motion, answer, and other matters of record, is satisfied that there are no genuine issues of material fact and that relief is not warranted. The purpose of the notice and statement of reasons is to allow the petitioner to respond to the court's determination that there are no genuine issues concerning material facts and relief can be denied on the basis of the record.

Here, the court filed an order and opinion on January 20, 1995, addressing all of the issues raised and explaining why they could be decided without need of an evidentiary hearing. Counsel followed with a motion to vacate the order and the court afforded counsel the opportunity to argue why, contrary to the court's stated reasoning, an evidentiary hearing was necessary. In substance, the opinion served the same function as the Rule 1507(a) notice and statement of reasons, and the motion to vacate served the same function as the response to the proposed dismissal. Thus, the court's failure to follow the rule does not constitute an independent ground for relief in this appeal. See *Commonwealth v. Morris*, 546 Pa. 296, 684 A.2d 1037 (1996).

Furthermore, based on our examination of each of the issues in light of the record, set forth fully herein, we conclude that there were no genuine issues of material fact; thus the court did not err in denying relief without an evidentiary hearing.

The motion for post-conviction relief put forward numerous claims of ineffective assistance of counsel. These claims are essentially repeated in this appeal. At the time Hardcastle filed his motion for collateral relief, the PCRA required, as it does now, that the petitioner plead and prove by a preponderance of the evidence

That the conviction or sentence resulted from one or more of the following:

. . . .

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

42 Pa.C.S. § 9543(a)(2)(ii).

We shall consider the claims in sequence as they relate to the course of the trial. The first claim is that counsel failed to "life-qualify" the jury. During voir dire, the prospective jurors were asked by the court whether they had any moral, religious or ethical beliefs that would prevent them from voting for the death penalty in a proper case. This inquiry has come to be known as "death-qualifying" the jury, as its purpose is to exclude jurors who are not qualified to serve because they could not follow the law and impose the death penalty even where the law requires them to do so. Hardcastle argues that counsel should have asked the prospective jurors whether they had any beliefs that would prevent them from voting for life imprisonment in an appropriate case, or whether they would automatically vote for the death penalty upon a conviction of first degree murder.

We have previously held that although such questions are permissible, they are not required and counsel is not ineffective for failing to pose them. *Commonwealth v. Blount*, 538

Pa. 156, 647 A.2d 199 (1994); *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575 (1991); *Commonwealth v. Porter*, 524 Pa. 162, 569 A.2d 942 (1990); *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987). The Appellant's brief fails to acknowledge these decisions, much less try to distinguish them or present reasons why they should no longer be followed. Accordingly, stare decisis requires that this claim be rejected.

■ We next consider the argument that counsel failed to properly investigate certain facts. The context of this claim is the testimony of several Commonwealth witnesses, Jeanette High and Anthony Evans. High testified that she saw a man, whom she described in detail but could not identify, leave the victims' house on Stewart Street, turn right (east), and then right again (south) across a basketball court. Evans testified that he saw Hardcastle, whom he knew, by a vacant lot near his house on Sharswood Street, which is immediately south of Stewart Street. Evans's description of Hardcastle corresponded with High's description of the man she saw, and both sightings occurred at about the same time.

Hardcastle refers to various street maps and photographs of the site and suggests that people who lived in the neighborhood could testify to the configuration of lots and fences there. He asserts that an investigation of these things by counsel would have revealed that it would have been physically impossible for him to have followed the path described by High and then be seen near Evans's house at approximately the same time.

Hardcastle places much weight on summaries of the testimony contained in this Court's prior opinion. For example, we indicated that Evans testified that he observed Hardcastle "stumbling through *the vacant lot next to Joseph Gregg's house*," 519 Pa. at 248, 546 A.2d at 1107 (emphasis added). Later, we wrote that "a man matching appellant's description was seen running out of the victim's house. It was at this time that the fire was discovered. The man was carrying a box and ran through the vacant lot next to the victim's home. Approximately the same time a witness observed appellant

stumbling out of the rear *of the same vacant lot.* Appellant was carrying a carton box filled with liquor and beer." *Id.* at 251, 546 A.2d at 1108 (emphasis added).

Hardcastle's "physical impossibility" argument depends almost entirely on a variance between these summaries and the layout of the area. That is, the basketball court next to the victims' house and the vacant lot next to Evans's house are not one and the same place. As the Commonwealth notes in its brief, however, and as is confirmed by a review of the trial transcripts, contrary to the description in our prior opinion Evans did not testify that he saw Hardcastle come out of the lot next to the victims' house. Rather, he testified that he saw Hardcastle stumbling and *guessed* that he had been *in the lot next to Evans's house.*

This minor inaccuracy in our summary of the evidence, which Appellant's reply brief points out was based on inaccuracies in the Commonwealth's brief in the direct appeal, has no bearing on the conclusion reached in our prior opinion that based on the cumulative effect of the circumstantial evidence a jury could find beyond a reasonable doubt that Hardcastle was guilty of first degree murder. A single person could easily have been seen by High running from the victims' house on Stewart Street then through the basketball court, and been seen moments later by Evans stumbling in front of the vacant lot next to his house on Sharswood Street.

As the common pleas court observed, the configuration of the area was fully explored at trial with the testimony of High, Evans, and the investigating police officer. The record plainly refutes the argument that through more diligent investigation counsel could have discovered a different set of facts that would have raised a reasonable doubt as to whether High and Evans were describing the same man.

Hardcastle makes two other claims of ineffective assistance that are tangentially related to Jeanette High's testimony. One is that counsel failed to object to an improper remark by the prosecutor in her opening statement. The brief for Appellant reproduces the statement from the transcript as follows:

You will hear from another witness, who observed the defendant later on coming out of the house at a time when the house was on fire.

Brief at 34, quoting N.T. 11/29/82, 48. It is argued that counsel should have objected because the witness referred to is unquestionably Jeanette High, and through discovery materials counsel should have known that she could not identify the person she saw coming out of the house as Hardcastle, even though she knew him.

We agree with the Commonwealth that this argument is "particularly baseless." The excerpt from the transcript in the Appellant's brief conveniently omits what the prosecutor said next:

You will hear testimony that that person, although knowing the defendant, *could not see his face, but that the description fit the defendant.* ...

(Emphasis added). Taken as a whole, these remarks constitute a fair summary of what the prosecutor expected the testimony to be and cannot be characterized as an improper suggestion that High would identify Hardcastle by name.[2]

Hardcastle also argues that counsel failed to object to portions of the prosecutor's closing argument that mischaracterized High's testimony. The prosecutor stated:

Now that person comes charging out of the house. It's my recollection that Jeanette High never said that that person

---

**2.** We note that this claim is presented without even acknowledging the common pleas court's ruling much less offering argument as to why that ruling was erroneous. This defect, common to other claims as well, is especially egregious given the nature of the claim. The common pleas court determined that the argument was premised on taking the statement out of context and, by providing the context, explained why the statement was not objectionable. Nevertheless, the brief to this Court presents the statement out of context in exactly the same way. Thus a claim so frivolous that it could only be made in the first instance by a deficient reference to the record has been perpetuated through thoughtless repetition.

We admonish counsel that this Court does not sit to review these matters de novo. Even where review in this Court is as of right, the appellate advocate must in all candor reflect on the decision of the lower court and fashion the appeal as an argument as to why that decision is erroneous or should be reversed.

went through any basketball court. It's my recollection that Jeanette High said that that person came out of the front door of the residence and went through the back yard. N.T. 12/3/82, 54–55. Hardcastle argues that the prosecutor's questioning of High four days earlier had repeatedly elicited testimony that High saw the person run through the basketball court, thus the statement in the closing argument misrepresented the testimony.

Once again, the supposedly objectionable comment is taken out of context. The transcript reveals that almost immediately thereafter the prosecutor continued by stating "the person went through this back yard. Now that back yard leads to all this lot area, leads to Sharswood Street through the basketball court. . . ." Thus the prosecutor acknowledged High's testimony that she saw the person run through the basketball court, but broke the sequence into separate elements, focusing on the person's passage through the yard before the basketball court. Not only was this an accurate reflection of High's testimony, see N.T. 11/30/82, 103–04, it was made in response to defense counsel's argument, which suggested that the person seen by High went directly from the house to the basketball court.[3] For all of these reasons there is no merit to the argument that counsel was ineffective for failing to object.

■ Counsel is also charged with ineffective assistance for having failed to call Earl Harris as an alibi witness at trial. Harris, a friend of Hardcastle, was presented as a character witness by the defense during the penalty hearing. On cross-examination, he testified that he came home on the night of the incident to find Hardcastle sitting on his steps, needing a place to stay. He indicated that he arrived home at around 12:30 a.m. and that Hardcastle stayed with him until around 10:00 a.m. Since the fire started around 1:30 a.m., and High, Evans, and others testified to seeing Hardcastle or someone who fit his description at about that time, the argument is that

---

**3.** Additionally, the prosecutor prefaced her comments by stating that this was her recollection, and the court properly instructed the jurors that comments of counsel were not evidence and that it was their recollection of the testimony that controlled.

counsel should have offered Harris as an alibi witness because his testimony placed Hardcastle at a different place.

In ruling on this argument, the common pleas court observed that counsel had met with Harris prior to trial, and there is no indication in the record or, significantly, in the extensive post-conviction documents submitted by Hardcastle pro se, that counsel knew or should have known that Harris was a potential alibi witness. Harris's statement as to the time he encountered Hardcastle, which was given in response to the prosecutor's question during cross-examination, was never probed for accuracy. It is thus an exceptionally flimsy foundation for a claim that Harris should have been presented as an alibi witness. This is especially true in light of the fact that such an alibi would have contradicted the defense strategy acknowledging Hardcastle's presence in the area but emphasizing the lack of direct evidence placing him inside the victims' house or tying him to the killings and the fire (an eminently reasonable strategy given the eyewitness identification testimony of persons who knew Hardcastle).[4]

Counsel's stewardship is also challenged with regard to several matters arising in the penalty hearing. It is argued that counsel failed to investigate and present mitigating evidence regarding Hardcastle's childhood. This argument makes reference to information developed in the presentence report suggesting that Hardcastle was removed from his home to foster care for several years due to abuse at the hands of his mother, and that he was at one time diagnosed with "diffuse minimal brain damage" and hyperactivity treated with Ritalin.

This argument, however, ignores the fact that counsel presented the testimony of Hardcastle himself, his mother, and his friend, Earl Harris. Hardcastle testified about his age, work history, and lack of significant criminal record. His

4. It also contradicts a statement made by Hardcastle himself to the investigator preparing the presentence report. Hardcastle indicated that he had been in the vicinity, taken a box of liquor from Joseph Gregg's car, and stumbled in front of Evans's house. This statement, of course, is consistent with Evans's account, which placed Hardcastle at the scene (and thus not with Harris) at about 1:45 a.m.

mother testified to a good relationship with her son and her belief that he had not committed the crimes. Harris described Hardcastle as a kind person who related well to others.

Plainly, the present complaint is not that counsel failed to investigate and present *any* evidence of mitigation, but that he should have presented a different case in mitigation, based at least in part on evidence contradictory to the evidence actually presented. Just as plainly, it cannot be said that the strategy chosen by counsel was unreasonable.

■ It is also asserted that counsel rendered ineffective assistance in eliciting information from Hardcastle about his juvenile arrest record. Review of the transcript indicates that this testimony, to the effect that as a teenager Hardcastle had been picked up for three or four minor infractions that were later dismissed, developed in conjunction with testimony that Hardcastle had no adult convictions. (The Commonwealth was precluded from later questioning Hardcastle as to whether he had any adult arrests).

We have previously held that counsel may reasonably choose a strategy of candidly disclosing a defendant's criminal history. *Commonwealth v. Savage*, 529 Pa. 108, 602 A.2d 309 (1992). Even if it is not clear on the face of the record that this was a deliberate tactic chosen by counsel here, the same effect is readily apparent from the fact that the jury found the mitigating circum stance provided in 42 Pa.C.S. § 9711(e)(1), no significant history of prior criminal convictions.

■ Another claim of ineffective assistance is founded on counsel's failure (1) to object to the prosecutor's argument in favor of finding the aggravating circumstance provided in 42 Pa.C.S. § 9711(d)(7), that in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense; and (2) to preserve on direct appeal the argument that this aggravating circumstance was not supported by the evidence.

The latter of these claims is patently meritless. Whether the sufficiency issue was preserved by counsel or not, pursu-

ant to 42 Pa.C.S. § 9711(h)(3)(ii) on direct appeal this Court was required to determine whether the evidence supported the aggravating circumstances found.[5] Implicit in our affirmance was a determination that it was. Indeed, as the common pleas court noted, in *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624 (1991), we cited this case as an example of a situation where the evidence was sufficient to support the knowing creation of a grave risk of death aggravating circumstance.

The citation in *Mitchell* also points out the flaw in the former claim. The prosecutor made a brief argument to the effect that Hardcastle knowingly created a grave risk of death to one or both of the victims when he set the fire because he did not know for sure that either of the victims was dead from the stabbings he had inflicted on them. Hardcastle contends that this argument was improper because it was not supported by the record. He points to the medical examiner's testimony that both of the victims were dead before the fire started. The Commonwealth responds that the prosecutor was focusing on Hardcastle's state of mind at the time he set the fire, not on whether the victims were in fact dead. This was to counter defense counsel's argument that in stabbing one victim Hardcastle could not have knowingly created a grave risk to the other and vice versa.

Even if the prosecutor's argument was poor, it was not so detached from the record evidence as to be objectionable. In *Mitchell*, we described this case as one where the evidence was sufficient to support the aggravating circumstance "where the defendant set fire to a home *after he killed all of the*

---

5. At the time of the direct appeal in this case, § 9711(h)(3)(ii) provided, "The Supreme Court shall affirm the sentence of death unless it determines that ... the evidence fails to support the finding of an aggravating circumstance specified in subsection (d)." We interpreted this to mean that we were required to vacate the judgment of sentence of death and remand for a sentence of life imprisonment if any of the aggravating circumstances relied on by the jury was not supported by the evidence. See *Commonwealth v. Aulisio*, 514 Pa. 84, 522 A.2d 1075 (1987); *Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833 (1985) (plurality opinion). Of necessity, then, our review encompassed an examination of the sufficiency of the evidence with respect to each aggravating circumstance found.

*residents."* 528 Pa. at 555, 599 A.2d at 628 (emphasis added). Thus apart from the reasons advanced by the prosecutor, the jury had a proper basis on which to find the aggravating circumstance.

 The last claim that counsel's representation was constitutionally inadequate is based on the failure to object to the court's instructions regarding the necessity of a unanimous verdict for a sentence of death. The court initially instructed the jury that the sentence must be death

if you unanimously find at least one aggravating circumstance, as I have just gone over them with you, and no mitigating circumstance, or circumstances, as I have just reviewed, or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances that you may find.

N.T. 12/8/82, 82. Later, during its deliberation, the jury asked the court if it was "compelled by the law to give the death penalty when the aggravating circumstances outweigh the mitigating circumstances?" The court responded

the verdict must be a sentence of death if the jury unanimously—I emphasize the word "unanimously"—finds at least one aggravating circumstance and no mitigating circumstance, or, if the jury unanimously—I once again emphasize the word "unanimously"—finds one or more aggravating circumstances which outweigh any mitigating circumstance or circumstances.

N.T. 12/9/82, 2–3.

Hardcastle argues that under *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), these instructions were improper. In *Mills,* the Supreme Court vacated a death sentence where it found that the sentencing form used by the jury, in conjunction with instructions from the court, presented a substantial possibility that the jurors could have thought that only those mitigating circumstances agreed on by all jurors could be weighed against aggravating circumstances. Thus the possibility existed that a single hold-out juror, by refusing to find a mitigating circumstance agreed on by all the

other jurors, could prevent the jury as a whole from weighing that circumstance against aggravating circumstances, with the further result that the aggravating circumstances would stand against no mitigating circumstances, in which case the death sentence would have to be imposed.

■ We note first that *Mills* was decided six years after Hardcastle's trial. Counsel's failure to object to the charge cannot be evaluated in hindsight but must be examined in light of the circumstances at the time. Even if we consider this claim for collateral relief as falling under 42 Pa.C.S. § 9743(a)(1)(i) (petitioner must prove that conviction or sentence resulted from "a violation of ... the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"), no relief is due. Hardcastle concedes that the court's instructions were similar to the language of the death penalty statute, 42 Pa.C.S. § 9711(c)(1)(iv). We have already rejected arguments that the statute and instructions conforming to it violate the rule in *Mills.* See *Commonwealth v. Murphy,* 540 Pa. 318, 657 A.2d 927 (1995); *Commonwealth v. Banks,* 540 Pa. 143, 656 A.2d 467 (1995).

The final argument is a renewal of the claim that the prosecutor used peremptory challenges to exclude potential jurors on the basis of their race. As set out more fully in our opinion on direct appeal, 519 Pa. at 241–45, 546 A.2d at 1103–05, this issue was first presented to the common pleas court on post-trial motions pursuant to the then-controlling precedent of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The court en banc awarded a new trial on these grounds and the Commonwealth appealed. Superior Court reversed, 343 Pa.Super. 609, 494 A.2d 479 (1985), and this Court, after granting Hardcastle's petition for allowance of appeal, dismissed the appeal as having been improvidently granted, 509 Pa. 161, 501 A.2d 249 (1985).

Thereafter, in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court

overruled *Swain* and adopted a different approach to review-ing claims of discriminatory use of peremptory challenges. Upon a prima facie showing by the defendant of such discrimi-nation, the prosecutor would be required to articulate a race-neutral reason for the challenges. The trial court would then have to evaluate the issue in light of all the relevant circum-stances.

Thus when this case came here on direct appeal, *Batson* had been decided. We noted in our opinion that because the issue had been preserved, Hardcastle was entitled to the benefit of the *Batson* ruling. We stated, however, that it presented a difficult problem for review, because the defense had not objected during voir dire, the prosecutor had not responded, and the trial court had not ruled on the issue. We resolved the difficulty by "mak[ing] a *post hoc* evaluation of the record, examining each of the Commonwealth's fourteen peremptory challenges to determine whether appellant [had] made out a prima facie case of improper use." 519 Pa. at 244, 546 A.2d at 1104. We then determined that on the face of the record, race-neutral reasons were apparent in ten of the twelve in-stances where the Commonwealth used a peremptory chal-lenge.

Notwithstanding the language in our opinion to the effect that the Appellant had not made out a prima facie case, the extensive analysis of the record for race-neutral reasons indi-cates that our post hoc analysis actually presumed the exis-tence of a prima facie case, evaluated the evidence and all the relevant circumstances as the trial court would ordinarily do pursuant to *Batson,* and resolved the ultimate issue by decid-ing that the Commonwealth had not used its peremptory challenges improperly.

■ In addition to the other requirements to be eligible for PCRA relief, a petitioner must prove that the allegation of error has not been previously litigated. 42 Pa.C.S. § 9543(a)(3). Under the definition of previous litigation pro-vided in 42 Pa.C.S. § 9544(a)(2), the foregoing recapitulation would seem to establish beyond doubt that the claim that the

prosecutor used peremptory challenges to exclude blacks from the jury has been finally litigated. Nevertheless, Hardcastle argues that the decisions of this Court in *Commonwealth v. Dinwiddie,* 529 Pa. 66, 601 A.2d 1216 (1992), and the United States Supreme Court in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), somehow "override the conclusions reached by this Court on the direct appeal." Brief for Appellant at 49. This argument is difficult to fathom, for if finality means anything it must mean that our decision on the merits in this case, as to which certiorari was denied by the United States Supreme Court, cannot be affected by decisions in other cases decided three and four years later.

The order of the common pleas court denying the motion for post-conviction collateral relief is affirmed.