J-S17039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARRELL D. GOREE | |
| Appellant | No. 1640 WDA 2014 |

Appeal from the PCRA Order September 10, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0007569-2010

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED APRIL 1, 2015**

Appellant, Darrell D. Goree, appeals from the order entered in the Allegheny County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. In January 2010, M.M. ("Victim") was a student at the Kaplan Career Institute, studying to be a medical assistant.  On January 6, 2010, Victim had class in the morning until approximately noon.  Shortly after her class, Victim boarded a bus.  Appellant, who was a stranger to Victim, approached Victim, asked for her name, and asked if Victim had a boyfriend.  Victim

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Former Justice specially assigned to the Superior Court.

responded with her name and indicated that she did not have a boyfriend. Appellant then asked if Victim wanted to go to lunch. Victim initially declined Appellant's invitation, but after Appellant persisted several times, Victim agreed to have lunch with him. Victim followed Appellant off the bus, and the two walked around together outside. At some point, Appellant led Victim down an alleyway and toward an abandoned house. Victim became nervous because Appellant was significantly larger than Victim, who was only 4'10" tall and approximately ninety (90) pounds. Victim started to scream, but Appellant grabbed her wrist and pulled her into the house. Appellant led Victim to the third floor of the house, directed Victim to lie down on a wallboard on the floor, and removed Victim's clothing. Appellant stuck two fingers into Victim's vagina, and then forced Victim to have sexual intercourse with him. Victim tried to scream, but Appellant stuck his sock into Victim's mouth to quiet her. Victim bit and kicked Appellant during the encounter.

After Appellant finished having sex with Victim, he dumped Victim's purse onto the floor and removed Victim's wallet. Victim's wallet contained, *inter alia*, a Capital One credit card. Appellant demanded that Victim tell Appellant the pin number for the credit card, so Victim supplied a fake pin number. Appellant took Victim's wallet and left the house. When Victim exited the abandoned house, she flagged down a woman for help. The woman helped Victim contact the police. Victim subsequently reported the

incident to police and sought medical attention for her injuries.

Meanwhile, Appellant attempted to make numerous transactions using Victim's credit card. At 2:06 p.m. that day, Appellant attempted to use Victim's credit card at an ATM on 540 East Ohio Street. When the transaction was declined, Appellant tried to use Victim's credit card at another ATM within walking distance at 807 Middle Street; this transaction was also declined. Appellant made three additional attempts to remove money from the ATM at 807 Middle Street using Victim's credit card; each transaction was unsuccessful. At 3:20 p.m. and 3:22 p.m., Appellant made two successful purchases using Victim's credit card at a Wal-Mart. Appellant made other attempts to use Victim's credit card at Wal-Mart, but the subsequent transactions were declined. Appellant also tried to use Victim's credit card at a Ross store and a Wine & Spirits store, but those transactions were similarly unsuccessful.

Police arrested Appellant on May 13, 2010, and the Commonwealth charged Appellant with rape, sexual assault, aggravated indecent assault, unlawful restraint, robbery, and access device fraud. Appellant proceeded to a bench trial on August 29, 2011. At trial, the Commonwealth presented the following testimony/evidence, *inter alia*: (1) Victim's testimony; (2) testimony from Officer Krebs, who made contact with Victim shortly after the assault; Officer Krebs testified that Victim was shaken, sobbing, and appeared disoriented and confused; Officer Krebs retraced Victim's steps to

the abandoned house and contacted his supervisor to report the crime scene; (3) Victim's medical records following the assault on January 6, 2010, which the court admitted by stipulation of the parties; swabbing of Victim's vaginal area showed the presence of seminal material matching Appellant's profile; (4) testimony from Detective Boss, who interviewed Victim at the hospital; the detective testified that Victim was shaking and terrified, with dirt and debris all over her body; Detective Boss subsequently spoke to a representative at Capital One and obtained Victim's credit card statement from the day in question from the bank's fraud investigation department; using Victim's credit card statement from January 6, 2010, Detective Boss testified about the different transactions made on that day; Detective Boss also testified that he received surveillance videos from the various locations where transactions were made on January 6, 2010, showing a man matching Appellant's description making the transactions listed on Victim's credit card statement;[2] and (5) testimony from Janet McFarland, a sexual assault nurse examiner, who examined Victim; Victim told Nurse McFarland what had happened with Appellant, and Nurse McFarland testified that Victim's injuries were consistent with her description of the events; Nurse McFarland reported that Victim had vaginal bleeding, an abrasion to her knee, and black

_____

[2] Detective Boss admitted that the surveillance video from 807 Middle Street was not useful because that video did not show the person making the transaction.

- 4 -

markings on her hands.

Appellant presented the following testimony/evidence, *inter alia*, in his defense: (1) testimony from Janet Orr, the bank manager at the ESB Bank located at 807 Middle Street where Appellant attempted to use Victim's credit card; Ms. Orr testified that if someone uses an incorrect pin number three times, the machine retains the bank card and shreds it; (2) testimony from Detective Boss (whom the defense re-called), that when police executed a search warrant of Appellant's residence, police did not recover any of Victim's belongings; and (3) Appellant's testimony; Appellant testified that he already knew Victim on January 6, 2010, and they had previously engaged in sexual intercourse sometime in July 2009; Appellant said that when he ran into Victim on the bus on January 6, 2010, the two made conversation and talked about "hooking up" (meaning, having sex); Appellant said he walked with Victim to the abandoned house and they had consensual sex; when Victim asked for Appellant's phone number, Appellant said he could not give it to her because Appellant's girlfriend might find out, so Victim offered to buy Appellant another phone; Victim gave Appellant her credit card to purchase a phone, as well as the pin number for the credit card; Appellant tried to dispense money from an ATM using Victim's card so he could take the money to a Cricket store to purchase a phone; when the ATM attempts were unsuccessful, Appellant used the credit card at Wal-Mart to buy a Virgin mobile phone and a Virgin phone card; Appellant ran into

Victim several weeks later, and returned Victim's credit card; upon questioning from the court, Appellant said Victim did not go with Appellant to purchase the phone from the Cricket store because the store was too close to Appellant's house, and Appellant's girlfriend might see Appellant with Victim; Appellant also admitted he attempted to purchase liquor and other items using Victim's credit card because Appellant took advantage of the situation.

On August 30, 2011, at the conclusion of trial, the court convicted Appellant of all counts. The court sentenced Appellant on November 7, 2011, to five (5) to ten (10) years' imprisonment for rape, plus ten (10) years' probation, and a consecutive ten (10) years' probation for sexual assault; the court did not impose any further penalty for the remaining convictions. Appellant timely filed post-sentence motions, which the court granted in part and denied in part on March 15, 2012. The court granted relief solely as to Appellant's illegal sentencing claim, agreeing that Appellant's sexual assault sentence should have merged with Appellant's rape sentence; the court denied Appellant's challenges to the weight of the evidence and the discretionary aspects of his sentence. On April 5, 2012, the court entered a new sentencing order, which eliminated the sexual assault probationary sentence. Thus, the court sentenced Appellant to five (5) to ten (10) years' imprisonment for rape, plus ten (10) years' probation; the court imposed no further penalty for the remaining convictions.

This Court affirmed Appellant's judgment of sentence on December 11, 2012, and our Supreme Court denied allowance of appeal on August 6, 2013. *See Commonwealth v. Goree*, 64 A.3d 17 (Pa.Super. 2012), *appeal denied*, 621 Pa. 653, 72 A.3d 600 (2013). On January 17, 2014, Appellant timely filed a *pro se* PCRA petition. The court appointed counsel on January 28, 2014, who filed an amended PCRA petition on May 29, 2014. On August 14, 2014, the court issued notice of its intent to dismiss Appellant's petition without a hearing per Pa.R.Crim.P. 907; Appellant did not respond. The court denied Appellant's PCRA petition on September 10, 2014. On October 6, 2014, Appellant timely filed a notice of appeal. On October 8, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on October 20, 2014.

Appellant presents the following issues for our review:

> WAS [APPELLANT'S] CLAIM FOR RELIEF PROPERLY COGNIZABLE UNDER THE POST-CONVICTION RELIEF ACT?[3]

_____

[3] Appellant's first issue is simply an explanation of why Appellant's ineffective assistance of counsel claim (raised in his second issue) is cognizable and properly preserved under the PCRA. The Commonwealth does not dispute that Appellant's ineffectiveness of counsel claim is cognizable under the PCRA and preserved. Appellant is eligible for relief under the PCRA if he can plead and prove his ineffectiveness of counsel claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii) (explaining PCRA petitioner must plead and prove his conviction or sentence resulted from, *inter alia*, ineffective assistance of counsel). Thus, we will give issue one no further attention.

DID THE [PCRA] COURT ABUSE ITS DISCRETION IN DENYING THE PETITION ALLEGING COUNSEL'S INEFFECTIVENESS WITHOUT A HEARING, WHERE [APPELLANT] ESTABLISHED THE MERITS OF THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO AND MAKE A SUFFICIENT OFFER OF PROOF IN RESPONSE TO [THE] COURT'S LIMITATION OF HIS CROSS-EXAMINATION OF DETECTIVE BOSS WITH REGARD TO THE ALLEGED VICTIM'S CREDIT LIMIT?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. **Commonwealth v. Ford**, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Carr**, 768 A.2d 1164 (Pa.Super. 2001). A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. **Commonwealth v. Hardcastle**, 549 Pa. 450, 701 A.2d 541 (1997).

Appellant argues Victim gave him the pin number to her credit card so Appellant could purchase a new phone. Appellant asserts that during cross-examination of Detective Boss during the Commonwealth's case-in-chief, defense counsel attempted to elicit testimony from Detective Boss

concerning Victim's credit limit on her credit card. Appellant explains the court interrupted defense counsel to ask where counsel was going with his line of questioning. Defense counsel responded that testimony of Victim's credit limit was relevant to show several of Appellant's attempted transactions with Victim's credit card were declined because Victim's account had insufficient funds—not because Appellant was using the wrong pin number. The court precluded defense counsel from proceeding with this line of questioning, and counsel did not object. Appellant maintains counsel's failure to object resulted in this Court's waiver on direct appeal of Appellant's challenge to the court's preclusion of Detective Boss' testimony. Appellant claims testimony concerning Victim's credit limit was essential because the case centered on Victim's credibility, and proof that the transactions were unsuccessful because the account had insufficient funds (and not because Appellant used the wrong pin number) would have undermined Victim's credibility relative to Appellant's robbery and access device fraud convictions. Appellant contends counsel failed to lodge an appropriate objection to the court's ruling or provide a sufficient offer of proof to the court regarding why the testimony was so crucial. Appellant submits he had a right to explore the possibility that the credit card transactions were declined solely due to insufficient funds, which would have cast doubt on Victim's version of the events. Appellant concludes counsel's errors constituted ineffective assistance of counsel, and this Court must reverse the

order denying PCRA relief and grant Appellant a new trial.[4] We disagree.

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Gonzalez***, 858 A.2d 1219, 1222 (Pa.Super. 2004), *appeal denied*, 582 Pa. 695, 871 A.2d 189 (2005). To prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Turetsky***, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Id.*** "A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Spotz***, ___ Pa. ___, ___, 84 A.3d 294, 312 (2014) (quoting ***Commonwealth v. Ali***, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010)). "The petitioner bears the

---

[4] Appellant also insists counsel was ineffective because he did not ask Victim or Ms. Orr (the manager of the ESB Bank) about the credit limits reflected in Victim's bank statements. Appellant failed to raise this particular claim in his Rule 1925(b) statement, so it is waived. ***See Commonwealth v. Castillo***, 585 Pa. 395, 888 A.2d 775 (2005) (holding issues not raised in Rule 1925(b) statement will be deemed waived on appeal).

burden of proving all three prongs of the test." *Turetsky, supra* at 880

(quoting *Commonwealth v. Johnson*, 868 A.2d 1278, 1281 (Pa.Super.

2005), *appeal denied*, 583 Pa. 680, 877 A.2d 460 (2005)). Significantly,

"[i]f it is clear that [an a]ppellant has not demonstrated that counsel's act or

omission adversely affected the outcome of the proceedings, the claim may

be dismissed on that basis alone and the court need not first determine

whether the first and second prongs have been met." *Commonwealth v.*

*Albrecht*, 554 Pa. 31, 46, 720 A.2d 693, 701 (1998).

Instantly, the PCRA court explained its denial of Appellant's PCRA

petition, as follows:

> Over 3 years ago, this [c]ourt was the fact-finder in a non-jury trial. The [c]ourt heard from 9 witnesses including [Appellant]. The decision was guilty of all charges. Sentencing followed as did a direct appeal to the Superior Court of Pennsylvania. In December, 2012, our appeals [C]ourt affirmed, *see*, 754 WDA 2012, followed by our Supreme Court declining any further review on August 6, 2013. *See*, 8 WAL 2013.
>
> [Appellant] sought post-conviction relief with the assistance of appointed counsel. On August 14, 2014, this [c]ourt set forth its initial inclinations [in its Rule 907 notice order[5]] about the claims being raised and their lack

_____

[5] In its Rule 907 notice order, the PCRA court explained: "Based upon a review of the entire case file, the [c]ourt feels there are not genuine issues of any material fact and no purpose would be served by conducting any additional proceedings. It is the [c]ourt's view, at this point, that he is not entitled to any relief as a matter of law. The reasons for this position are a vivid memory of the facts, the implausibility of more cross-examination changing anything, and the inability of [Appellant] to show prejudice." (Rule 907 Notice Order, filed 8/14/14, at 1).

of merit. On September 10, 2014, the [c]ourt dismissed the PCRA [petition] without a hearing. [Appellant] takes exception to that act. He claims this [c]ourt should have granted him a hearing on his claim of ineffective assistance of counsel. [Appellant] says his trial lawyer was "ineffective" in two ways: first by not objecting to this [c]ourt's stopping him from [presenting] relevant evidence; Concise Statement, paragraph 18(A); and, second, by "failing to make a sufficient offer of proof of the relevance of the evidence in response to this court's limiting his cross-examination of Detective Boss with regard to the alleged victim's credit limit." *Id.* According to [Appellant], this testimony would have raised a reasonable doubt because this evidence would have placed a negative cast on [Victim's] entire version of events. The [c]ourt disagrees with that interpretation. As mentioned in earlier expressions by this [c]ourt, the [c]ourt believed the government's main witness, [Victim]. [As stated at the conclusion of trial,] "I find the victim, although extremely gullible, to be credible. I find the story of [Appellant] to be totally incredible." [N.T. Trial, 8/30/11, at 168-69]. Any effort to undercut that believability with such tangential evidence does not clear the hurdle of [Appellant] showing prejudice. As such, his PCRA [petition] was dismissed without any more fact finding.

(PCRA Court Opinion, filed October 27, 2014, at 1-2). We accept the PCRA court's reasoning. *See Hardcastle, supra*; *Ford, supra*; *Carr, supra*. The PCRA court was the fact-finder at Appellant's trial and had the opportunity to assess, *inter alia*, Appellant's and Victim's credibility. The court indicated in its opinion that even if the court had heard more testimony concerning Victim's credit limit, that testimony would not have changed the guilty verdict.

Moreover, Appellant presented other evidence to support his theory that the transactions were unsuccessful due to insufficient funds in Victim's

account, and not because Appellant used the wrong pin number. Specifically, Ms. Orr testified that the Middle Street ATM would have taken and shredded a credit card if the person using the card entered the wrong pin number three times. The record evidence shows Appellant attempted four unsuccessful transactions at the Middle Street ATM; the ATM did not retain or shred the credit card. Thus, the court heard evidence to support Appellant's theory but still found sufficient evidence to convict Appellant. Consequently, Appellant cannot establish prejudice; and his ineffectiveness claim fails. **See Spotz, supra**; **Albrecht, supra**; **Turetsky, supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/2015