J-S45007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL RHOADES | : | |
| | : | |
| Appellant | : | No. 3789 EDA 2015 |

Appeal from the PCRA Order December 1, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008038-2012,
CP-51-CR-0008039-2012, MC-51-CR-0041569-2007

BEFORE: GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED AUGUST 17, 2017**

Appellant, Michael Rhoades, appeals *pro se* from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

In its opinion, the PCRA court accurately set forth the relevant facts of this case as follows:

> 1. Victim 1—[Victim #1], CP-51-CR-0008038-2012
>
> Around late 2009 or early 2010, [Appellant's] wife, co-defendant Tamara Rhoades ("co-defendant Ms. Rhoades"), met [Victim #1] online. Based on co-defendant Ms.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Retired Senior Judge assigned to the Superior Court.

Rhoades's encouragement, [Victim #1] came to live with [Appellant] and co-defendant Ms. Rhoades in their Philadelphia home to start some sort of romantic relationship with co-defendant Ms. Rhoades. During the two years that [Victim #1] lived with [Appellant] and co-defendant Ms. Rhoades, [Appellant] and co-defendant Ms. Rhoades subjected [Victim #1] to horrible abuse while at the same time trying to prevent her from leaving the house.

[Appellant] and co-defendant Ms. Rhoades physically abused [Victim #1]. On one occasion, co-defendant Ms. Rhoades hit [Victim #1] over the head with a bottle. [Appellant] and co-defendant Ms. Rhoades worked temporary jobs with [Victim #1], and then took all the money that [Victim #1] earned from this work. [Appellant] and co-defendant Ms. Rhoades threatened to hurt [Victim #1]'s family. Throughout this two year time period, [Victim #1] was expected to have sex with co-defendant Ms. Rhoades and sometimes [Appellant].

On February 16, 2012, co-defendant Steven Mills, ("co-defendant Mills")[2] came over [to Appellant's] house. The three co-defendants went into [Victim #1]'s bedroom where she was sleeping. [Appellant] punched [Victim #1] in the face. Co-defendant Mills then dragged [Victim #1] to the basement. Co-defendant Mills and co-defendant Ms. Rhoades beat [Victim #1], and co-defendant Mills poured alcohol and other flammable liquids on her. Co-defendant Mills then used a lighter to set her on fire.

During this time when the co-defendants and [Victim #1] were in the basement, [Appellant] was in the upstairs bedroom. However, at one point, co-defendant Ms. Rhoades and co-defendant Mills brought [Victim #1] to the upstairs bedroom where [Appellant] was, and [Appellant] asked [Victim #1] if she had enough. Co-defendant Ms. Rhoades then punched [Victim #1] and set her on fire again. [Victim #1] sustained second-degree burns to her

---

[2] The certified record sometimes refers to Appellant's co-defendant as Steven Miller.

face, chest, breast, buttocks, and inside her genitals, and her hand and orbital bone were broken.

Over the next few days, [Appellant], co-defendant Ms. Rhoades, and co-defendant Mills tried to concoct a plan for how to explain the victim's injuries. [Appellant] and the co-defendants devised the story that [Victim #1] had sexually abused [Appellant's] fourteen-year-old daughter and that it was [Appellant's] daughter who had injured [Victim #1]. [Appellant] prepared a script for [Victim #1] to read on camera confessing to the supposed crime. They also bought [Victim #1] a bus ticket to Pittsburgh and made sure that she got on the bus. [Appellant], co-defendant Ms. Rhoades, and co-defendant Mills, and [Appellant's] daughter, Michelle, then went to police. [Appellant] told the police that his daughter hurt [Victim #1] because [Victim #1] had sexually abused her. The police were able to determine the real story because the victim had gone to a hospital in Pittsburgh and reported what happened to the police.

2. Victim 2—[Victim #2], CP-51-CR-008039-2012

A detective went to [Appellant's] house with a search warrant. The second victim, [Victim #2], opened the door of [Appellant's] house. The detective was alarmed because [Victim #2] had two black eyes and was the same age as the other victim, [Victim #1]. The police discovered that [Victim #2] had been treated similarly to [Victim #1], although [Victim #2] was not beaten as badly as [Victim #1].

Co-defendant Ms. Rhoades had persuaded [Victim #1] to look on the internet for other people to come live with them. [Victim #1] found [Victim #2] online and persuaded her to come live at the Rhoades' home. [Appellant] and co-defendant Ms. Rhoades took Social Security checks and student loan checks from [Victim #2]. Co-defendant Ms. Rhoades also beat [Victim #2], including punching her in the face and hitting her in the face with a master lock. [Victim #2] was threatened by [Appellant] and co-defendant Ms. Rhoades, and [Victim #2] felt that she could not leave the house.

(PCRA Court Opinion, filed June 14, 2016, at 3-5) (internal citations and footnotes omitted).

Procedurally, on September 25, 2012, Appellant entered a negotiated guilty plea at docket No. CP-51-CR-0008038-2012, to aggravated assault, arson, conspiracy, false imprisonment and trafficking of persons (Victim #1). Appellant also entered a negotiated guilty plea at docket No. CP-51-CR-0008039-2012, to conspiracy, trafficking of persons, and simple assault (Victim #2). In exchange for Appellant's guilty plea, the Commonwealth agreed to recommend an aggregate sentence at both dockets of fifteen (15) to thirty (30) years' imprisonment and to ask the court to enter *nolle prosequi* for other more serious charges including attempted murder. Appellant executed a written guilty plea colloquy and the court performed a thorough oral plea colloquy to confirm Appellant's plea was knowing, intelligent, and voluntary. Appellant expressly stated in his written plea colloquy and during the oral plea colloquy that he had not ever been treated for mental illness.

Appellant waived preparation of a pre-sentence investigation ("PSI") report and mental health evaluation, and proceeded to sentencing on November 5, 2012. The court imposed the recommended aggregate sentence of fifteen (15) to (30) years' incarceration. Plea counsel acknowledged at sentencing that the parties had agreed to some sentences above the standard range guidelines in light of the Commonwealth's

agreement to drop other more serious charges. Appellant did not file a direct appeal.

On April 10, 2013, Appellant timely filed a *pro se* PCRA petition, claiming the court should not have accepted his guilty plea which agreed to some sentences above the standard range guidelines, where Appellant was the least culpable defendant. Appellant also baldly asserted plea counsel had unlawfully induced his guilty plea. The court appointed PCRA counsel, who filed on May 11, 2015, a motion to withdraw and a "no-merit" letter pursuant to **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). On June 26, 2015, the court issued notice of its intent to dismiss the petition without a hearing per Pa.R.Crim.P. 907. Appellant responded *pro se* on July 13, 2015. In his response, Appellant claimed for the first time that plea counsel was ineffective for failing to investigate Appellant's mental health. Appellant also raised a layered ineffectiveness claim, challenging PCRA counsel's failure to raise plea counsel's ineffectiveness in an amended PCRA petition. On August 14, 2015, PCRA counsel asked the court for additional time to confer with Appellant about these new allegations. Counsel informed the court on November 30, 2015, that no amended PCRA petition was necessary. The court denied PCRA relief on December 1, 2015.

Appellant timely filed a *pro se* notice of appeal on December 14, 2015. The court did not order Appellant to file a concise statement of errors

complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none. On July 22, 2016, PCRA counsel filed an application in this Court to withdraw, stating the PCRA court had not ruled on his prior petition to withdraw.[3] On August 11, 2016, this Court expressly permitted PCRA counsel to withdraw.

Appellant raises two issues for our review:

> APPELLANT MOVES THIS HONORABLE COURT TO REMAND THE INSTANT CASE TO THE COURT OF COMMON PLEAS OF PHILADELPHIA "CCP"…WITH AN ORDER TO APPOINT COMPETENT COUNSEL, THUS, PERMITTING MEANINGFUL POST CONVICTION REVIEW.
>
> [PLEA] COUNSEL AS WELL AS PCRA COUNSEL WERE INEFFECTIVE FOR FAILING TO INVESTIGATE APPELLANT'S PSYCHIATRIC HISTORY.

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings.

---

[3] The PCRA court entered two orders denying PCRA relief in this case, one on November 30, 2015 (mentioning only docket No. 8039-2012), and one on December 1, 2015 (mentioning all relevant dockets). The November 30, 2015 order stated: "Attorney relieved." The December 1, 2015 order did not mention counsel's request to withdraw.

*Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541 (1997).

In his first issue, Appellant argues that his review of the record in this case shows PCRA counsel demonstrated a "lack of candor" to the court. Specifically, Appellant asserts that, after receipt of Appellant's *pro se* response to Rule 907 notice, PCRA counsel told the court it was the first time counsel had heard about Appellant's purported mental health issues. Appellant contends PCRA counsel's statement was untrue because Appellant notified PCRA counsel numerous times since counsel's appointment about Appellant's ongoing mental illness. Appellant claims PCRA counsel abandoned him by filing a *Turner/Finley* letter and declining to file an amended PCRA petition raising Appellant's mental health issues. Appellant concludes he is entitled to meaningful appellate review of his first PCRA petition, which necessitates the appointment of competent counsel to advance his claims, and this Court should remand for the appointment of new counsel to represent Appellant in this appeal. We disagree.

Generally, an indigent PCRA petitioner is entitled to the appointment of

counsel during litigation of the petitioner's first PCRA petition including any appeal. **_See_** Pa.R.Crim.P. 904(C), (F)(2) (explaining court shall appoint counsel to represent indigent defendant on first PCRA petition; appointment of counsel shall be effective throughout post-conviction collateral proceedings, including any appeal from disposition of petition for post-conviction collateral relief). Nevertheless, where the court accepts a **_Turner_**/**_Finley_** no-merit letter and permits counsel to withdraw, the petitioner is not entitled to the appointment of new PCRA counsel, and he must retain private counsel or proceed _pro se_ in future proceedings. **_Commonwealth v. Rykard_**, 55 A.3d 1177, 1183 n.1 (Pa.Super. 2012), _appeal denied_, 619 Pa. 714, 64 A.3d 631 (2013) (citing **_Commonwealth v. Maple_**, 559 A.2d 953 (Pa.Super. 1989) (holding that where appointed post-conviction counsel has been permitted to withdraw pursuant to **_Turner_**/**_Finley_**, appointment of new counsel is unnecessary and improper)).

Instantly, Appellant timely filed a _pro se_ PCRA petition on April 10, 2013. The court appointed PCRA counsel, who subsequently filed a **_Turner_**/**_Finley_** "no merit" letter and a petition to withdraw as counsel. This Court expressly permitted counsel to withdraw on August 11, 2016. Thus, Appellant is no longer entitled to the appointment of counsel to assist him with this appeal. **_See Rykard, supra_**; **_Maple, supra_**.

In his second issue, Appellant argues plea counsel was ineffective for failing to investigate Appellant's mental health, and PCRA counsel was

ineffective for failing to raise plea counsel's ineffectiveness in an amended PCRA petition. Appellant asserts he has a long history of mental illness and has been involuntarily committed several times. Appellant maintains he is a "people pleaser" and would have done anything his co-defendant/ex-wife had asked him to do. Appellant claims his statements at the guilty plea colloquy denying prior mental health treatment are "immaterial." Appellant insists his mental health is particularly relevant in this case because the court did not have the benefit of a PSI report prior to sentencing. If plea counsel had investigated Appellant's mental health, Appellant claims he then might have been able to use that history to advance a diminished capacity defense if he proceeded to trial or to obtain a lighter sentence or more favorable plea deal. Appellant contends he notified PCRA counsel about his mental health issues on numerous occasions. Appellant submits PCRA counsel failed to represent Appellant adequately by declining to present plea counsel's ineffectiveness in an amended PCRA petition. Appellant concludes plea counsel and PCRA counsel were ineffective, and this Court should vacate the order denying PCRA relief and remand for further proceedings. We disagree.

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Gonzalez***, 858 A.2d 1219, 1222 (Pa.Super. 2004), *appeal denied*, 582 Pa. 695, 871 A.2d 189 (2005). To prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a

preponderance of the evidence, ineffective assistance of counsel, which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Turetsky**, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: "(1) the underlying claim is of arguable merit; (2) …counsel had no reasonable strategic basis for his…action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Id.** at 880. "The petitioner bears the burden of proving all three prongs of the test." **Id.**

To demonstrate a "layered" claim of current counsel's ineffectiveness has arguable merit, the petitioner must develop all three prongs of the test as to the ineffectiveness of prior counsel. **Commonwealth v. Brown**, 582 Pa. 461, 474, 872 A.2d 1139, 1146 (2005). "Stated differently, if the petitioner fails to develop any of the three…prongs regarding the underlying issue of trial counsel ineffectiveness, he…will have failed to establish the arguable merit prong of the claim of [subsequent] counsel's ineffectiveness." **Id.** "Only when the petitioner has adequately pled and presented the ineffectiveness of [prior] counsel pursuant to the [three prong] test will this Court proceed to review the **layered** claim to determine whether he…has proven [subsequent] counsel's ineffectiveness." **Id.** (emphasis in original).

- 10 -

"With regard to an attorney's duty to investigate [a defendant's mental health], …the reasonableness of a particular investigation depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation." **Commonwealth v. Willis**, 68 A.3d 997, 1002 (Pa.Super. 2013). **See also Commonwealth v. Lewis**, 560 Pa. 240, 743 A.2d 907 (2000) (holding neither trial nor appellate counsel was ineffective for failing to investigate whether appellant suffered from brain damage or serious mental illness where appellant showed no indication of mental illness during pre-trial proceedings or at trial).

Further, a PCRA petitioner cannot raise a claim of trial counsel's ineffectiveness for the first time in response to Rule 907 notice; the petitioner must instead seek leave to amend his petition. **See Rykard, supra** at 1192 (explaining appellant could not raise claim of trial counsel's ineffectiveness for first time in response to Rule 907 notice; to aver properly new non-PCRA counsel ineffectiveness claim, petitioner must seek leave to amend his petition).[4]

Instantly, on June 26, 2015, the court issued Rule 907 notice of its

---

[4] Conversely, the response to Rule 907 notice is the first opportunity for a petitioner to aver PCRA counsel's ineffectiveness. **See Commonwealth v. Smith**, 121 A.3d 1049 (Pa.Super. 2015) (explaining response to Rule 907 notice is opportunity for petitioner to object to PCRA counsel's effectiveness; petitioner's failure to raise ineffectiveness of PCRA counsel after receipt of Rule 907 notice results in waiver of claim).

intent to dismiss Appellant's PCRA petition without a hearing. On July 13, 2015, Appellant responded *pro se* and asserted for the first time that plea counsel was ineffective for failing to investigate Appellant's mental health. Significantly, Appellant had omitted this claim from his *pro se* PCRA petition and PCRA counsel did not mention it in his **Turner**/**Finley** no-merit letter. As well, Appellant did not seek leave to amend his petition to raise this new claim. Therefore, Appellant's challenge to plea counsel's ineffectiveness is waived. **See Rykard, supra**.

Moreover, even if Appellant had properly preserved his claim of plea counsel's ineffectiveness, it would merit no relief. During his oral guilty plea colloquy and in his written plea colloquy, Appellant expressly stated he had not been treated for mental illness. (**See** N.T. Guilty Plea Hearing, 9/25/12, at 10); (Written Guilty Plea Colloquy, 9/25/12, at 1) (stating: "I have never seen a doctor or been in a hospital for any mental health problems—I can understand what is going on. I am not under the influence of drugs or alcohol. I have not taken any medicine in the last week"). Appellant actively participated in his guilty plea and sentencing proceedings, stating he was "more than satisfied" with plea counsel's representation (**see** N.T., 9/25/12, at 28) and providing a detailed allocution at sentencing expressing his regret and remorse for his crimes (**see** N.T. Sentencing, 11/5/12, at 6-7). At no time during either proceeding did Appellant exhibit signs that he suffered from any mental health issues. In fact, Appellant expressly stated

that he wanted to thank plea counsel and the prosecutor because his "crime was far worse than what [he pled] guilty to" and "[the sentence] could have been worse." (*Id.*) Under these circumstances, plea counsel had no reason to investigate Appellant's mental health. *See Lewis, supra*; *Willis, supra*.

Further, to the extent Appellant suffers from any mental health issues, a diminished capacity defense would be inapplicable here because Appellant was not charged with or did not plead guilty to first-degree murder. *See Commonwealth v. Cuevas*, 574 Pa. 409, 832 A.2d 388 (2003) (explaining diminished capacity is extremely limited defense, which requires extensive psychiatric testimony establishing defendant suffered from one or more mental disorders which prevented him from formulating specific intent to kill; when defendant asserts successful diminished capacity defense to negate specific intent to kill, first-degree murder is reduced to third-degree murder).

Additionally, to the extent Appellant suggests plea counsel was ineffective for failing to order a PSI report, Appellant ignores the fact that he entered a negotiated plea agreement, including a sentence; and the court imposed the agreed-upon sentence. Appellant's claims that an investigation into his mental health might have secured a more favorable plea deal or more lenient sentence are mere speculation. Consequently, Appellant cannot establish prejudice with respect to plea counsel's alleged ineffectiveness. *See Turetsky*, *supra*. Because Appellant failed to satisfy

the test concerning plea counsel's alleged ineffectiveness, his layered claim of PCRA counsel's ineffectiveness lacks arguable merit and necessarily fails as well.  ***See Brown, supra***.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/17/2017