J-S19006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DERRELL V. SAVAGE, | |
| Appellant | No. 1551 EDA 2015 |

Appeal from the PCRA Order Entered April 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0505662-2005

BEFORE: BENDER, P.J.E., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED APRIL 04, 2016**

Appellant, Derrell V. Savage, appeals from the post conviction court's April 30, 2015 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant presents one claim of trial counsel's ineffectiveness. After careful review, we vacate the PCRA court's order and remand for an evidentiary hearing.

The PCRA court summarized the facts of Appellant's case, as follows:

> On March 13, 2005, Christine Ham ["the decedent"], called Appellant, who[m] she believed to be her boyfriend, and invited him to visit her in Chester, PA. Appellant[,] accompanied by two of his friends, Demarcus Hamms and John Garrett, were en route when they were attacked by a group of local youths armed with bats, pipes, and broomsticks. Appellant and his friends believed that the decedent set them up for the assault, and on their way back to Philadelphia[,] they discussed killing her in retaliation. Appellant and his co-conspirators planned to lure the decedent to Philadelphia, stab her to death, burn her body, and then throw her remains in the river behind the Bartram Village apartment complex in southwest Philadelphia. On April 23,

2005[,] they carried out their plan. Appellant lured [the] [d]ecedent to the Bartram Garden Botanical Historical Site whereupon Hamms repeatedly stabbed her while Appellant punched and stomped her. The three then put the decedent in a trash can and unsuccessfully attempted to set her afire. Finally, they threw her into the river and watched until she began to sink. [The] [d]ecedent did not die immediately, however. She managed to drag herself onto land but succumbed to blood loss and hypothermia. The next day[,] Philadelphia police officers found the decedent's body lying in the field at Bartram Garden. An autopsy revealed that she had been stabbed sixteen times.

On the night of the murder[,] Philadelphia Police Officer Jessie Davis was told that Appellant had information regarding the killing and arrangements were made for [Officer] Davis to meet with him. Appellant told [Officer] Davis that Hamms and Dawson stabbed a black female in the field of Bartram Garden Botanical Site but he did not acknowledge his involvement in the murder. The next day[, Officer] Davis transported Appellant to the Police Department's Homicide Unit where Appellant signed in as a visitor and sat in a public waiting area to be interviewed by detectives. Appellant was then placed in an interview room and remained there for several hours as an 'information witness.' The door to the interview room was locked and, though he was never informed so, he was free to go at any time. During the interview[,] Appellant stated that he was present at the time of the murder and he described how Dawson and Hamms committed the murder. At the conclusion of the interview he was given dinner and allowed to take a nap. Later, Appellant was informed that Dawson and Hamms had also been interviewed and he then admitted his involvement in the murder.

PCRA Court Opinion (PCO), 8/14/15, at 2-3 (unnumbered; citations to the record omitted).

On December 14, 2006, a jury convicted Appellant of first-degree murder and criminal conspiracy based on his participation in the murder of Christine Ham. On February 28, 2007, Appellant was sentenced to life imprisonment, without the possibility of parole, for his murder conviction, and a concurrent term of 20 to 40 years' incarceration for his conspiracy

offense. On April 25, 2008, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied his subsequent petition for allowance of appeal on December 16, 2008. ***Commonwealth v. Savage***, 953 A.2d 839 (Pa. Super. 2008) (unpublished memorandum), *appeal denied*, 962 A.2d 1196 (Pa. 2008).

On July 27, 2009, Appellant filed a timely, *pro se* PCRA petition and counsel was appointed. Counsel filed an amended petition on March 14, 2011. Over the ensuing years, the PCRA court continued the PCRA proceedings 23 times at the request of the Commonwealth and/or defense counsel.[1] Finally, on January 15, 2015, the Commonwealth filed a motion to dismiss. After another continuance, the court ultimately issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing, and did so by order dated April 30, 2015.

Appellant filed a timely notice of appeal. Thereafter, new PCRA counsel entered his appearance on Appellant's behalf and timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement. The PCRA court filed a Rule 1925(a) opinion on August 14, 2015. Herein, Appellant raises two issues for our review:

> 1. That the Honorable PCRA [c]ourt erred where it dismissed [Appellant's] Amended PCRA Petition without holding an

---

[1] The large majority of these continuances are described on the trial court's docket as "PCRA Hearing Continued."

evidentiary hearing even though [Appellant] properly pled and could have proven causes for relief including the following:

>a) Trial counsel was ineffective when counsel failed to call known and necessary witnesses at the motion to suppress which would clearly have established that [Appellant] was arrested without a warrant and without probable cause and that this unconstitutional seizure of [Appellant] lead [*sic*] directly to his unwilling and uncounseled out-of-court statement. Rather than voluntarily going to the police station, [Appellant] was actually taken against his will and this important piece of the case was never developed by previous/trial/motion counsel, although he well knew about it.

>2. That [Appellant] is entitled to remand to the PCRA [c]ourt for an evidentiary hearing as the [c]ourt erred when it denied [Appellant's] Amended PCRA Petition without holding said hearing.

Appellant's Brief at 8.

We begin our analysis by noting that,

>[t]he standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. ***Commonwealth v. Allen***, 557 Pa. 135, 142, 732 A.2d 582, 586 (1999). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Carr***, 768 A.2d 1164 (Pa. Super. 2001). Furthermore, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings. Pa.R.Crim.P. 907(1); ***Commonwealth v. Hardcastle***, 549 Pa. 450, 701 A.2d 541 (1997).

***Commonwealth v. Taylor***, 933 A.2d 1035, 1040 (Pa. Super. 2007).

Where, as here, a petitioner asserts ineffective assistance of counsel,

the following standard applies:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing ***Strickland***[ ***v. Washington***, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the ***Strickland*** performance and prejudice test into a three-part inquiry. ***See*** [***Commonwealth v.***] ***Pierce***, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Ali***, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." ***Commonwealth v. Simpson***, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. ***See Ali, supra***. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Colavita***, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ***Commonwealth v. King***, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" ***Ali***, 608 Pa. at 86–87, 10 A.3d at 291 (quoting ***Commonwealth v. Collins***, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing ***Strickland***, 466 U.S. at 694, 104 S.Ct. 2052)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

- 5 -

We additionally note that, in the context of trial counsel's failure to call a witness at a suppression hearing, a petitioner demonstrates ineffectiveness by proving:

(1) the existence and availability of the witness; (2) counsel's awareness of, or duty to know of the witness; (3) the witness' willingness and ability to cooperate and appear on behalf of appellant; and (4) the necessity of the proposed testimony in order to avoid prejudice.

*Commonwealth v. Hall*, 701 A.2d 190, 201 (Pa. 1997)

In Appellant's first issue, he asserts that the PCRA court erred by denying his petition, without a hearing, when he presented a meritorious claim of ineffective assistance of trial counsel premised on counsel's handling of Appellant's pretrial motion to suppress. By way of background, in that motion, Appellant argued, *inter alia*, that his statements to police on April 25th and 26th of 2005 should be suppressed because they were the fruit of an illegal arrest. However, at the suppression hearing, defense counsel focused on arguing, and eliciting evidence to prove, that Appellant's statements were involuntary because his "will and his understanding were overborne by [the] extremely lengthy period of [time that he was] held in a small room, without food or drink, [and] without anybody to advise him." N.T. Suppression Hearing, 12/4/06, at 4-5; *see also* Trial Court Opinion (TCO), 5/2/07, at 11 (construing Appellant's suppression argument as claiming that his statements to police were "involuntary because the police locked him in a small room for a long period of time before they started interviewing him"). While defense counsel mentioned that Appellant was

"brought … *in custody* to the homicide division[,]" counsel did not present evidence to support that Officer Davis had illegally arrested Appellant prior to transporting him to the police department for questioning. N.T. Suppression Hearing at 2.

Indeed, the Commonwealth's evidence demonstrated that Appellant *voluntarily* came to the police station to be interviewed. For instance, Philadelphia Police Detective Kevin Judge testified that Appellant "contacted … [O]fficer [Davis,] informing him that he had information about this murder and the … officer made arrangements for [Appellant] to be brought down to Homicide to be interviewed." *Id.* at 13. The detective explained that Appellant walked "in through the front door, into the lobby[,]" signed in on a "visitor's log book" at 7:46 a.m. on April 25, 2005, and then was "put in [the] waiting room area for witnesses in the homicide office." *Id.* at 14, 15, 16. Based on this evidence, the suppression court concluded that Appellant's statements to police were admissible, noting, *inter alia*, that Appellant, "went to the police station voluntarily to give information on the murder." TCO at 11.[2]

---

[2] On direct appeal to this Court, we rejected Appellant's challenge to the suppression court's ruling. In doing so, we noted our agreement with the suppression court's rationale, and also stressed that Appellant "was an informational witness who voluntarily contacted police; he was free to leave [the polices station] at any time; he knowingly and intelligently waived his rights; his interviews were actually very short; he was fed and rested." ***Commonwealth v. Savage***, No. 944 EDA 2007, unpublished memorandum at 4 (Pa. Super. filed April 25, 2008).

Now, Appellant contends that his trial counsel was ineffective for not presenting, at the suppression hearing, the testimony of his father, Wayne Savage (hereinafter "Mr. Savage") and Jessica Watson (hereinafter "Ms. Watson"). According to Appellant, these witnesses would have testified that Appellant did not voluntarily go with Officer Davis to the police station to speak with homicide detectives. In an affidavit drafted by Mr. Savage and attached to Appellant's *pro se* petition, Mr. Savage claims that on the morning of April 25, 2015, he and Appellant were in Mr. Savage's vehicle when they encountered Officer Davis on the street. Officer Davis told them that Appellant must come to the homicide division to speak to detectives. At that point, Appellant informed Officer Davis that he was not going to speak to police until he contacted an attorney. Officer Davis then stepped in front of Mr. Savage's vehicle, preventing Appellant and Mr. Savage from leaving. Officer Davis called for backup officers, who physically removed Appellant from Mr. Savage's van. Appellant was then placed in handcuffs, put in the back of a police car, and transported to the police station. Ms. Watson also submitted an affidavit, which Appellant attached to his *pro se* petition. Ms. Watson's affidavit corroborates Mr. Savage's version of events.[3]

---

[3] While Officer Davis was not called to the stand at the suppression hearing, we note that his trial testimony corroborates, in large part, Mr. Savage's and Ms. Watson's version of events:

> [The Commonwealth:] So you told [Appellant] that homicide detectives wanted to talk to him about [the murder]?

*(Footnote Continued Next Page)*

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

[Officer Davis:] Yes, I did.

[The Commonwealth:] Then what happened, Officer Davis?

[Officer Davis:] He made a phone call to his father. … [A]pproximately 15 minutes later, his father pulled up and told [Appellant] to get in the car.

[The Commonwealth:] When you told [Appellant] that he needed to go to Homicide, what was his response to that?

[Officer Davis:] He pretty much got nervous and jittery and didn't want to go.

[The Commonwealth:] Did he tell you he didn't want to go?

[Officer Davis:] No.

[The Commonwealth:] How do you know he didn't want to go?

[Officer Davis:] Because he jumped in his father's car.

[The Commonwealth:] Did his father say anything when he pulled up in the car, when [Appellant] jumped in?

…

[Officer Davis:] His father told me his son wasn't going down to Homicide and he was going to make a couple phone calls.

[The Commonwealth:] At this point, where was [Appellant]?

[Officer Davis:] He was in the passenger's seat of his father's car.

…

[The Commonwealth:] So when [Appellant's] father told you that his son wasn't going to Homicide and they were going to make some calls first, what did you do?

[Officer Davis:] **I told him that the homicide detectives wanted to talk to him and he cannot leave**.  At which time, I got on my cell phone and I called for backup.

…

*(Footnote Continued Next Page)*

According to Appellant, Mr. Savage's and Ms. Watson's testimony proves that he was illegally arrested prior to going to the police station and, therefore, his statements to police would have been suppressed as fruit of that illegal arrest. Alternatively, Appellant contends that these witnesses' testimony about the circumstances leading up to Appellant's arrival at the police station would have cast "serious doubt" on the suppression court's "important finding regarding [Appellant's] voluntarily coming in and speaking to detectives." Appellant's Brief at 18. Consequently, Appellant avers that defense counsel was ineffective for not presenting these witnesses.

In rejecting Appellant's claim, the PCRA court solely concluded that Appellant was not prejudiced. The court explained:

_(Footnote Continued)_ ────────────

[The Commonwealth:] **So you told him I am a cop and your son needs to go to Homicide?**

[Officer Davis:] **Yes, I did.**

…

[The Commonwealth:] Did your backup arrive?

[Officer Davis:] They arrived pretty fast, yes.

[The Commonwealth:] Do you know how [Appellant] was then taken to or transported to Homicide?

[Officer Davis:] I believe, if I am not mistaken, **he was transported down to Homicide in the patrol wagon.**

N.T. Trial, 12/6/06, at 31-33 (emphasis added).

> [Appellant] asserts that his father and his girlfriend would have testified that police handcuffed Appellant before transporting him to police headquarters to be interviewed by detectives. He claims that this testimony would establish that Appellant was in custody at the time he was interviewed and confessed to his involvement in the murder. This contradicts the evidence presented at the suppression hearing and the findings of the suppression court that Appellant voluntarily met with Officer Davis; that he told [Officer] Davis that he knew who committed the murder; and that he voluntarily accompanied [Officer] Davis to police headquarters to be interviewed by detectives. The suppression court further found that Appellant was not in custody at the time he was interviewed by detectives and was not in custody when he confessed to his involvement in the murder. In fact, Officer Davis escorted Appellant through the front door; Appellant signed the log book as a visiting witness, and was then placed in an interview room. At all times relevant, he was free to leave. The suppression court, considering the totality of the circumstances, found that Appellant's confession was knowing and voluntary. The absence of the testimony of Appellant's father and his girlfriend did not prejudice Appellant so as to deny him a fair trial. He is not entitled to PCRA relief. Error was not committed.

PCO at 4-5 (citation omitted).

The PCRA court concludes that the evidence presented at the suppression hearing contradicts Mr. Savage's and Ms. Watson's version of events. As Appellant stresses, the contradictory nature of these witnesses' claims is the very *reason* why his trial counsel should have presented their testimony at the suppression hearing to cast doubt on the voluntariness of his statements to police. Moreover, while the PCRA court *alludes* that Mr. Savage's and Ms. Watson's claims were wholly incredible, the court did not conduct an evidentiary hearing, and made no specific credibility determinations in its opinion. Our Supreme Court "has made clear that, in cases where the PCRA court declined to hold a hearing, and where an

assessment of witness testimony was essential to a petitioner's ineffectiveness claims, the PCRA court must make specific credibility determinations." ***Commonwealth v. Johnson***, 966 A.2d 523, 540 (Pa. 2009) (citation omitted).

Additionally, while we acknowledge that this Court is bound by the PCRA court's credibility determinations, that is only true where they are supported by the record. ***Commonwealth v. Medina***, 92 A.3d 1210, 1214 (Pa. Super. 2014) ("The PCRA court's credibility determinations, when supported by the record, are binding on this Court."). Here, from the PCRA court's decision, we can only glean that the court found Mr. Savage's and Ms. Watson's claims incredible because they contradicted "the evidence presented at the suppression hearing…." PCO at 5. This is inaccurate, as there was *no* evidence presented at the suppression hearing pertaining to the interaction between Appellant and Officer Davis before Appellant arrived at the police station. The only witness who testified at the suppression hearing was Philadelphia Police Detective Kevin Judge, who first encountered Appellant at the police station at "approximately 9:00 a.m." N.T. Suppression Hearing at 18. The detective testified that "police personnel" brought Appellant to the station at approximately 7:46 a.m. and, upon arrival, Appellant walked in through the front door, signed into the visitor's log book, and was seated in the homicide unit's waiting area. The detective did not – and could not – offer any testimony regarding Appellant's initial contact with Officer Davis, which led to Appellant's being transported to the

police station. Therefore, the PCRA court is incorrect that Detective Judge's testimony about what happened *after* Appellant arrived at the police station contradicted the claims set forth in Mr. Savage's and Ms. Watson's affidavits, which pertained only to what occurred *prior* to Appellant's being brought to the station. Further, Officer Davis' testimony at trial also calls into question the PCRA court's rejection of Mr. Savage's and Ms. Watson's statements, as Officer Davis' testimony corroborates that Appellant did *not* voluntarily go with police to speak to the homicide detectives.

In sum, we conclude that the PCRA court erred by not rendering a specific credibility determination regarding the claims presented in Mr. Savage's and Ms. Watson's affidavits. To the extent that the court's opinion indicates that it rejected those witnesses' claims because the evidence at the suppression hearing contradicts them, the record does not support that determination. While we acknowledge that we can affirm a PCRA court's decision on any basis,[4] we are unable do so in this case. The PCRA court's analysis of the prejudice prong is flawed; the court did not analyze the other two prongs of the ineffectiveness test, nor the three remaining prongs of proving ineffectiveness for failure to call a witness; no evidentiary hearing

---

[4] **Commonwealth v. Hutchins**, 760 A.2d 50, 54 (Pa. Super. 2000) (stating "this Court may affirm the decision of the PCRA [c]ourt if it is correct on any basis") (citing **Commonwealth v. Pursell**, 749 A.2d 911, 917 (Pa. 2000); **Commonwealth v. Ahlborn**, 683 A.2d 632, 641 n.14 (Pa. Super. 1996)).

was conducted; and no explicit credibility determinations were set forth in the court's opinion. Under these circumstances, further assessment by the PCRA court is required.

Moreover, we agree with Appellant that there are genuine issues of material fact concerning the credibility of Mr. Savage and Ms. Watson, and whether their claims, if believed, demonstrate that Appellant was illegally arrested prior to speaking to police. If he was, there are also issues of material fact regarding whether his statements to police would have been suppressed due to that illegal arrest.[5] And, finally, a question could remain regarding the reasonableness of trial counsel's failure to call Mr. Savage and

_____

[5] As our Supreme Court has explained,

> not all confessions or admissions secured from an illegally arrested person are *per se* inadmissible as trial evidence. Whether such evidence is admissible, we noted, depends on the facts in each case, considering the following factors: (1) whether **Miranda** [**v. Arizona**, 384 U.S. 436 (1966),] warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and, (4) the purpose and flagrancy of the official misconduct. The voluntariness of the statement is, of course, a threshold requirement, and the confession must also be free of any element of coerciveness due to the unlawful arrest.

**Commonwealth v. Johnson**, 86 A.3d 182, 190-91 (Pa. 2014) (internal citations and quotation marks omitted).

Ms. Watson to the stand at the suppression hearing. Accordingly, we direct the PCRA court to conduct an evidentiary hearing upon remand.[6]

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2016

---

[6] The Commonwealth argues that no hearing is warranted because Appellant's "offer of proof was defective." Commonwealth's Brief at 9. The Commonwealth then discusses several ostensible inadequacies of Appellant's petition. However, the PCRA court did not address any of these purported deficiencies in Appellant's petition. Furthermore, Appellant obtained new PCRA counsel after filing his notice of appeal; thus, the PCRA court has the discretion, upon remand, to permit current counsel to amend Appellant's petition. Accordingly, it is not appropriate, at this juncture, to determine whether Appellant's petition has any deficiencies that would preclude an evidentiary hearing or post-conviction relief.