J. S38012/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                     :           PENNSYLVANIA
                 v.             :
                                       :
DONTEY EDWARDS,             :           No. 2755 EDA 2015
                                       :
           Appellant     :

Appeal from the PCRA Order, August 28, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0006809-2009

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 09, 2016**

Dontey Edwards appeals from the order entered in the Court of Common Pleas of Philadelphia County that dismissed his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").

The trial court set forth the facts of this case:

> On December 31, 2008, in the early afternoon, Eldridge Wesley ("Wesley") was outside with his cousin, Michael Walker ("Walker"), on the 1300 block of West Wishart Street. Malik Miles ("Miles") yelled at Wesley from down the street and, in response, Wesley began to approach Miles. As the two men began to talk, Wesley told Walker to walk down the street away from where he and Miles were standing, and Walker complied. Miles and Wesley proceeded to get into a "heated argument" over who was allowed to be out on that particular block selling drugs. While Miles and Wesley were arguing, Dontey Edwards ("Edwards") was standing near

Miles, but did not say anything to Wesley. In an attempt to end the conflict, Wesley "flagged" Miles and began walking away. As he looked back over his shoulder, Wesley saw Miles pull a black handgun from his pocket; Edwards had a black and chrome gun in his hand. Both Miles and Edwards began to shoot at Wesley. As Wesley began to run, he was shot in the leg and fell to the ground. Wesley kept moving on the ground, trying to seek cover, and was shot numerous times throughout his legs and abdomen. As Walker heard the shots, he saw Edwards begin to shoot at him and he ran away from the direction of the gunfire. Walker then ran toward Wesley when he saw him lying in the street and Wesley stated "Malik shot me" before losing consciousness.

At approximately 1:00 p.m. Officers Sneed and Stallbaum were traveling northbound on 13th Street while on their way to Temple Hospital. The officers were hailed by a male and a female who told them of a commotion just south of their location and as Officer Stallbaum was reversing the vehicle, they heard six (6) to eight (8) gunshots. The officers drove in the direction of the gunshots and when they arrived at the 1300 block of West Wishart Street moments later they found approximately thirty people running and screaming. The officers found Wesley unconscious, lying face up on the ground, covered in blood, with multiple gunshot wounds. They placed Wesley in their vehicle and rushed him to the Temple Hospital emergency room. Walker got in his brother's vehicle and began to drive to the hospital, but was stopped by Officers Ramos and Slobodian before he left the area. Officer Sneed stayed at the hospital until approximately 7:00 p.m., when a nurse provided him with a projectile that had been removed from Wesley's body and gave him an update that Wesley was in critical but stable condition.

Officers Waters and Frysiek responded to the radio call for a shooting on the 1300 block of West Wishart Street. They received flash

information for a "black male, medium build, wearing [a] greenish-brown hoodie [and] tan pants" whose name was Malik. The officers surveyed the area until an anonymous tip drew their attention to 3133 Camac Street. They radioed their location and then Officer Waters secured the front of the property while Officer Frysiek went to secure the rear. Officer Waters testified that the property appeared to be abandoned, as the outside was rundown, the front door could not be secured, the upstairs windows were broken, and the interior, as seen through a front window, was completely dilapidated. Officer Waters observed a male matching the flash description inside the property and as soon as backup officers arrived, less than one minute later, they knocked and entered through the unsecured door. As they entered, a couple of males were running up the stairs. Officer Waters observed Miles toss a small baggie to the floor as he was running up the steps and Officer Waters detained Miles just before he reached the second floor. The officer brought Miles back downstairs and recovered the baggie, which contained an off-white chunky substance, alleged[ly] crack cocaine.

From the rear of the property, Officer Frysiek observed a black male, later identified as Edwards, perched from a second floor rear window. The officer ordered him to stop, but Edwards jumped from the window. Officer Frysiek radioed a description of Edwards as "black male, black hoodie, orange shirt, blue jeans, and I believe tan boots." Officer Coulter was sitting in his vehicle in a perimeter position, when he observed the highway unit chasing a male, wearing a black hoodie, orange shirt, blue jeans and tan boots, on foot northbound up 12th Street. The officer proceeded northbound on 12th Street in his vehicle, following the male until the male made a right hand turn into an alleyway. Officer Coulter exited his vehicle, pursued the male up the alleyway on foot, arrested the male, and then Officer Frysiek identified him as the male who had jumped from the window.

Dr. Amy Goldberg is the Chief of Trauma and Surgical Critical Care at Temple University Hospital and she was qualified to testify as an expert in the field of medical trauma and critical care. Dr. Goldberg was one of many trauma surgeons who treated Wesley, upon his arrival at the hospital on December 31, 2008. Upon arrival, Wesley "had no blood pressure and was not breathing on his own and his heart rate was very, very slow." Among other gunshot wounds, Wesley had been shot through the femoral artery in his right thigh and had lost a significant amount of blood. Dr. Goldberg testified that with such trauma he could have bled out "within minutes" and that if he had not received emergency treatment as soon as he did "he could have died." Wesley was also bleeding from his rectum as well as his anus and he had sustained severe injuries to his bladder, large bowel, and veins within his pelvis. In addition to his abdominal injuries, Wesley suffered significant trauma to his leg bones, which required orthopedic surgeries to correct. Dr. Goldberg estimated that Wesley had undergone eighteen (18) separate surgeries in the course if [sic] his treatment at Temple University Hospital.

Officer Louis Grandizio, a fifteen year veteran of the Philadelphia police force, was qualified to testify as an expert in the field of ballistics and firearms identification. He explained the internal mechanism of a firearm, as well as the various components of a piece of ammunition, and he testified that he was able to match the eleven (11) fired cartridge casings that Detective Etsell had recovered from the scene to three different firearms. Officer Grandizio testified that there were eight (8) 9 millimeter Lugers fired from one firearm, two (2) 9 millimeter Lugers fired from a second firearm, and one (1) .32 automatic fired from a third firearm.

Trial court opinion, 4/28/11 at 3-7 (footnotes omitted).

The PCRA court set forth the following procedural history:

Prior to trial, Edwards and his co-defendant Malik Miles presented a motion for the court to grant a continuance, a motion to appoint a medical expert for the defense, and a motion for recusal, all of which this court denied. On February 16, 2010, Edwards elected to exercise his right to a jury trial and pled not guilty to all charges on bill of information CP-51-CR-0006809-2009. At the close of the Commonwealth's case-in-chief, Edwards made a motion for judgment of acquittal based on the evidence, which this court denied. On February 23, 2010, the jury found Edwards and co-defendant Malik Miles guilty of Attempted Murder (F1), Aggravated Assault (F1), Criminal Conspiracy for Engaging in Aggravated Assault ("Conspiracy") (F1), Carrying Firearms Without a License ("VUFA § 6106") (F3), Possession of an Instrument of Crime (M1), and Recklessly Endangering Another Person (M2).[1] At the conclusion of the trial, the case was continued to April 30, 2010 for sentencing. On April 30, 2010, this court sentenced Edwards to 8.5-20 years of incarceration in a state facility for Attempted Murder (F1) and 1.5-3 years of incarceration in a state facility for Carrying Firearms Without a License (F3), to run consecutively. He received no further penalty on the remaining charges.

On May 20, 2010, Edwards filed a notice of appeal to the Superior Court of Pennsylvania and the Court affirmed his convictions and judgment of sentence on February 29, 2012. On December 21, 2010, while his appeal was pending, Edwards filed a PCRA petition. This court sent Edwards a 907 Notice, pursuant to Pa.R.Crim.P. 907(1), on July 22, 2011 and formally dismissed the petition on August 26, 2011.

On October 29, 2012, Edwards filed the instant PCRA petition and on October 2, 2013, Edwards filed

---

[1] 18 Pa.C.S.A. § 901(a), 18 Pa.C.S.A. § 2702(a), 18 Pa.C.S.A. § 903(a)(1), 18 Pa.C.S.A. § 6106(a)(1), 18 Pa.C.S.A. § 907(a), and 18 Pa.C.S.A. § 2705, respectively.

a Partial Amendment to Post Conviction Relief Petition. PCRA counsel was appointed and, on January 1, 2015, counsel filed an Amended PCRA Petition. On May 19, 2015, the Commonwealth filed a Motion to Dismiss and the matter was first listed before this Court for decision on July 31, 2015. On August 5, 2015, following a review of the record, this Court sent Edwards a 907 Notice, pursuant to Pa.R.Crim.P. 907(1). This court did not receive any response to the 907 Notice. On August 28, 2015[,] this court dismissed the PCRA petition.

PCRA court opinion, 9/18/15 at 1-2.

Appellant raises the following issues for this court's review:

I. Whether the judge was in error in denying the Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness[?]

II. Whether the Judge was in error in not granting relief on the PCRA petition alleging counsel was ineffective[?]

Appellant's brief at 8.

With respect to whether the PCRA court erred when it did not grant relief on the PCRA petition that alleged trial and appellate counsel were ineffective,[2] the PCRA court has ably and thoroughly addressed these issues in its opinion of September 18, 2015. This court will affirm on the basis of that opinion.

With respect to whether the PCRA court erred when it denied the petition without conducting an evidentiary hearing, this court affirms.

---

[2] We have foregone the sequence of appellant's arguments.

In PCRA appeals, our scope of review "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." *Commonwealth v. Sam*, 952 A.2d 565, 573 (Pa. 2008) (internal quotation omitted). Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. *Commonwealth v. Pitts*, 981 A.2d 875, 878 (Pa. 2009). We defer to the PCRA court's factual findings and credibility determinations supported by the record. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In contrast, we review the PCRA court's legal conclusions *de novo*. *Id.*

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super. 2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. *Id.* It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. *Commonwealth v. Hardcastle*, 701 A.2d 541, 542-543 (Pa. 1997).
>
> *Commonwealth v. Turetsky*, 925 A.2d 876, 882 (Pa.Super. 2007), *appeal denied*, 940 A.2d 365

(Pa. 2007) quoting **Commonwealth v. Kalifah**, 852
A.2d 1238, 1239-1240 (Pa.Super. 2004).

**Commonwealth v. Wah**, 42 A.3d 335, 338 (Pa.Super. 2012).

Here, the PCRA court determined from the record before it that the issues raised by appellant lacked merit and that it had no need to conduct a hearing and did not err when it declined to conduct a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2016

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**TRIAL DIVISION – CRIMINAL SECTION**

COMMONWEALTH OF PENNSYLVANIA     :

       v.                             :        CP-51-CR-0006809-2009

DONTEY EDWARDS              :

## OPINION

This Opinion is written in support of this court's August 28, 2015 dismissal of

Dontey Edwards' PCRA petition.

## PROCEDURAL HISTORY

Prior to trial, Edwards and his co-defendant Malik Miles presented a motion for

the court to grant a continuance, a motion to appoint a medical expert for the defense,

and a motion for recusal, all of which this court denied. On February 16, 2010, Edwards

elected to exercise his right to a jury trial and pled not guilty to all charges on bill of

information CP-51-CR-0006809-2009. At the close of the Commonwealth's case-in-

chief, Edwards made a motion for judgment of acquittal based on the evidence, which

this court denied. On February 23, 2010, the jury found Edwards and co-defendant

Malik Miles guilty of Attempted Murder (F1), Aggravated Assault (F1), Criminal

Conspiracy for Engaging in Aggravated Assault ("Conspiracy") (F1), Carrying Firearms

Without a License ("VUFA § 6106") (F3), Possession of an Instrument of Crime (M1),

and Recklessly Endangering Another Person (M2). At the conclusion of the trial, the case was continued to April 30, 2010 for sentencing. On April 30, 2010, this court sentenced Edwards to 8.5–20 years of incarceration in a state facility for Attempted Murder (F1) and 1.5–3 years of incarceration in a state facility for Carrying Firearms Without a License (F3), to run consecutively. He received no further penalty on the remaining charges.

On May 20, 2010, Edwards filed a notice of appeal to the Superior Court of Pennsylvania and the Court affirmed his convictions and judgment of sentence on February 29, 2012. On December 21, 2010, while his appeal was pending, Edwards filed a PCRA petition. This court sent Edwards a 907 Notice, pursuant to Pa.R.Crim.P. 907(1), on July 22, 2011 and formally dismissed the petition on August 26, 2011.

On October 29, 2012, Edwards filed the instant PCRA petition and on October 2, 2013, Edwards filed a Partial Amendment to Post Conviction Relief Petition. PCRA counsel was appointed and, on January 1, 2015, counsel filed an Amended PCRA Petition. On May 19, 2015, the Commonwealth filed a Motion to Dismiss and the matter was first listed before this Court for decision on July 31, 2015. On August 5, 2015, following a review of the record, this Court sent Edwards a 907 Notice, pursuant to Pa.R.Crim.P. 907(1). This court did not receive any response to the 907 Notice. On August 28, 2015 this court dismissed the PCRA petition.

## DISCUSSION

The standard applied when reviewing an order dismissing a PCRA petition is whether the determination of the PCRA court is supported by the record evidence and is

free of legal error.[1] The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to plenary review.[2] The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.[3]

Pursuant to 42 Pa.C.S. 9545(b), a PCRA petition, including second and subsequent petitions, must be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that his claim(s) fall under any of the three enumerated exceptions to the one year requirement. These exceptions are interference by government officials[4], facts unknown and not discoverable by due diligence[5], and newly recognized constitutional rights that apply retroactively[6]. A petition claiming one of these exceptions must be filed within sixty (60) days of the time the claim could have been presented.[7] Further, the Pennsylvania Supreme Court set forth in *Commonwealth v. Fahy*[8] that "a claim of ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits."[9]

In the instant matter, Edwards' PCRA petition was timely filed and, in conjunction with the Amended Petition, asserted claims of ineffective assistance of counsel. Upon review of the record, the petition, the Amended Petition, and the Commonwealth's Motion to Dismiss, this Court has determined that Edwards' claims are without merit.

Under the Post-Conviction Relief Act, claims of ineffective assistance of counsel are evaluated pursuant to the three-prong test set forth by the Pennsylvania Supreme

---

[1] *Com. v. Hart*, 911 A.2d 939, 941 (Pa. Super. 2006).
[2] *Com. v. Hawkins*, 894 A.2d 716, 722 (Pa. 2006).
[3] *Com. v. Hart*, 911 A.2d 939, 941 (Pa. Super. 2006).
[4] 42 Pa.C.S. 9545(b)(1)(i).
[5] 42 Pa.C.S. 9545(b)(1)(ii).
[6] 42 Pa.C.S. 9545(b)(1)(iii).
[7] 42 Pa.C.S. 9545(b)(2).
[8] 714 A.2d 214 (Pa. 1999).
[9] *Id.* at 223.

Court in *Commonwealth v. Pierce*[10], using the same standard as when such claims are raised on direct appeal.[11] *Pierce* established that ineffectiveness claims are measured by both counsel's performance and the prejudice suffered by the petitioner.[12] The law presumes counsel to have been effective; thus, the petitioner bears the burden of establishing the following three prongs: first, that the ineffectiveness claim has arguable merit; second, that counsel's act or omission did not have a reasonable basis; and third, that the petitioner suffered prejudice on account of counsel's act or omission.[13] If it is apparent that the prejudice prong has not been met, the first two prongs of the test need not be determined.[14]

In assessing the *Pierce* prongs related to counsel's performance, counsel's error or omission "must have so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place."[15] Counsel inherently has broad discretion to determine the strategy employed, thus a review of counsel's act or omission must determine whether counsel's decisions were reasonably designed to benefit the client.[16] A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.[17]

In assessing the prejudice prong of *Pierce*, the petitioner must prove that he suffered prejudice on account of counsel's decisions. "Prejudice" can be described as

[10] 527 A.2d 973 (Pa. 1987).
[11] *Com. v. Kimball*, 724 A.2d 326 (Pa. 1999).
[12] *Com. v. Pierce*, 527 A.2d 973, 975 (Pa. 1987).
[13] *Id.; see also Com. v. Breakiron*, 729 A.2d 1088, 1101 (Pa. 1999).
[14] *Com. v. Jones*, 683 A.2d 1181, 1188 (Pa. 1996).
[15] *Com. v. Hawkins*, 894 A.2d 716, 722 (Pa. 2006) (citing *Com. v. Allen*, 732 A.2d 582, 587 n.15 (Pa. 1999).
[16] *Com. v. Fowler*, 670 A.2d 153, 155 (Pa. Super 1996); *Com. v. Polston*, 616 A.2d 669, 677 (Pa. Super 1992).
[17] *Com. v. Howard*, 719 A.2d 233, 237 (Pa. 1998).

whether, but for the arguably ineffective act or omission, there is a reasonable probability that the outcome would have been different.[18] In other words, the petitioner must establish that counsel's actions prejudiced him to such an extent that a *reliable* determination of guilt was not made at trial.[19]

### A. Ineffectiveness claims against trial counsel

#### i. Claim of counsel's ineffectiveness for failing to file a motion that the verdict was against the weight of the evidence

Edwards' assertion that counsel was ineffective for failing to present a post-trial motion challenging the weight of the evidence is meritless, as the weight of the evidence presented at trial more than supported the jury's verdict. Counsel cannot be deemed ineffective for failing to file a frivolous motion and any challenge to the weight of the evidence would have lacked merit. This Court's April 28, 2011 Opinion in Edwards' direct appeal summarized the evidence presented as follows:

> On December 31, 2008, in the early afternoon, Eldridge Wesley ("Wesley") was outside with his cousin, Michael Walker ("Walker"), on the 1300 block of West Wishart Street. Malik Miles ("Miles") yelled at Wesley from down the street and, in response, Wesley began to approach Miles. As the two men began to talk, Wesley told Walker to walk down the street, away from where he and Miles were standing, and Walker complied. Miles and Wesley proceeded to get into a "heated argument" over who was allowed to be out on that particular block selling drugs.[20] While Miles and Wesley were arguing, Dontey Edwards ("Edwards") was standing near Miles, but did not say anything to Wesley. In an attempt to end the conflict, Wesley "flagged" Miles and began walking away.[21] As he looked back over his shoulder, Wesley saw Miles pull a black handgun from his pocket; Edwards had a black and chrome gun in his hand. Both Miles and Edwards began to shoot at Wesley. As Wesley began to run, he was shot in the leg and fell to the ground. Wesley kept moving on the ground, trying

---

[18] *Com. v. Kimball*, 724 A.2d 326, 330 (Pa. 1999).
[19] *Ccm. v. Lassen*, 659 A.2d 999, 1011 (Pa. Super 1995).
[20] N.T. 2/16/2010 at 146:1-4.
[21] N.T. 2/16/2010 at 146:4-5; 152:6-9.

to seek cover, and was shot numerous times throughout his legs and abdomen. As Walker heard the shots, he saw Edwards begin to shoot at him and he ran away from the direction of the gunfire. Walker then ran toward Wesley when he saw him lying in the street and Wesley stated "Malik shot me" before losing consciousness.

At approximately 1:00 p.m., Officers Sneed and Stallbaum were traveling northbound on 13th Street while on their way to Temple Hospital. The officers were hailed by a male and a female who told them of a commotion just south of their location and as Officer Stallbaum was reversing the vehicle, they heard six (6) to eight (8) gunshots. The officers drove in the direction of the gunshots and when they arrived at the 1300 block of West Wishart Street moments later they found approximately thirty people running and screaming. The officers found Wesley unconscious, lying face up on the ground, covered in blood, with multiple gunshot wounds. They placed Wesley in their vehicle and rushed him to the Temple Hospital emergency room. Walker got in his brother's vehicle and began to drive to the hospital, but was stopped by Officers Ramos and Slobodian before he left the area. Officer Sneed stayed at the hospital until approximately 7:00 p.m., when a nurse provided him with a projectile that had been removed from Wesley's body and gave him an update that Wesley was in critical but stable condition.

Officers Waters and Frysiek responded to the radio call for a shooting on the 1300 block of West Wishart Street. They received flash information for a "black male, medium build, wearing [a] greenish-brown hoodie [and] tan pants" whose name was Malik.[22] The officers surveyed the area until an anonymous tip drew their attention to 3133 Camac Street. They radioed their location and then Officer Waters secured the front of the property while Officer Frysiek went to secure the rear. Officer Waters testified that the property appeared to be abandoned, as the outside was rundown, the front door could not be secured, the upstairs windows were broken, and the interior, as seen through a front window, was completely dilapidated. Officer Waters observed a male matching the flash description inside the property and as soon as backup officers arrived, less than one minute later, they knocked and entered through the unsecured door. As they entered, a couple of males were running up the stairs. Officer Waters observed Miles toss a small baggie to the floor as he was running up the steps and Officer Waters detained Miles just before he reached the second floor. The officer brought Miles back downstairs and recovered the baggie, which contained an off-white chunky substance, alleged crack cocaine.

From the rear of the property, Officer Frysiek observed a black male, later identified as Edwards, perched from a second floor rear window. The officer ordered him to stop, but Edwards jumped from the window. Officer Frysiek radioed a description of Edwards as "black male,

---

[22] N.T. 2/18/2010 at 12:6-11.

black hoodie, orange shirt, blue jeans, and I believe tan boots."[23] Officer Coulter was sitting in his vehicle in a perimeter position, when he observed the highway unit chasing a male, wearing a black hoodie, orange shirt, blue jeans and tan boots, on foot northbound up 12th Street. The officer proceeded northbound on 12th Street in his vehicle, following the male until the male made a right hand turn into an alleyway. Officer Coulter exited his vehicle, pursued the male up the alleyway on foot, arrested the male, and then Officer Frysiek identified him as the male who had jumped from the window.

Dr. Amy Goldberg is the Chief of Trauma and Surgical Critical Care at Temple University Hospital and she was qualified to testify as an expert in the field of medical trauma and critical care. Dr. Goldberg was one of many trauma surgeons who treated Wesley, upon his arrival at the hospital on December 31, 2008. Upon arrival, Wesley "had no blood pressure and was not breathing on his own and his heart rate was very, very slow."[24] Among other gunshot wounds, Wesley had been shot through the femoral artery in his right thigh and had lost a significant amount of blood. Dr. Goldberg testified that with such trauma he could have bled out "within minutes" and that if he had not received emergency treatment as soon as he did "he could have died."[25] Wesley was also bleeding from his rectum as well as his anus and he had sustained severe injuries to his bladder, large bowel, and veins within his pelvis. In addition to his abdominal injuries, Wesley suffered significant trauma to his leg bones, which required orthopedic surgeries to correct. Dr. Goldberg estimated that Wesley had undergone eighteen (18) separate surgeries in the course if his treatment at Temple University Hospital.

Officer Louis Grandizio, a fifteen year veteran of the Philadelphia police force, was qualified to testify as an expert in the field of ballistics and firearms identification. He explained the internal mechanism of a firearm, as well as the various components of a piece of ammunition, and he testified that he was able to match the eleven (11) fired cartridge casings that Detective Etsell had recovered from the scene to three different firearms. Officer Grandizio testified that there were eight (8) 9 millimeter Lugers fired from one firearm, two (2) 9 millimeter Lugers fired from a second firearm, and one (1) .32 automatic fired from a third firearm.

Accordingly, the weight of the evidence more than supported Edwards' convictions for

Attempted Murder (F1), Aggravated Assault (F1), Conspiracy (F1), VUFA § 6106 (F3),

Possession of an Instrument of Crime (M1), and Recklessly Endangering Another

Person (M2) and any challenge by counsel would have lacked merit. As such,

---

[23] N.T. 2/18/2010 at 93:25; 94:26.
[24] N.T. 2/17/2010 at 19:14-16.
[25] N.T. 2/17/2010 at 20:10-17.

Edwards' instant claim of ineffectiveness does not satisfy the requisite prongs of *Pierce* and must be dismissed.

### ii. Claim of counsel's ineffectiveness for failing to file a motion to reconsider sentence

Edwards' assertion that counsel was ineffective for failing to present a post-trial motion for reconsideration of sentence also must fail because Edwards has not made the requisite showing of actual prejudice. This Court sentenced Edwards to an aggregate sentence of 10–23 years of incarceration in a state facility, which represents a lower end guideline sentence and, as such, this Court would not have reconsidered its sentence. On the charge of Attempted Murder, the guidelines with the deadly weapon enhancement were 8.5 years to the statutory limit and on the charge of VUFA § 6106 the guidelines were 18–30 +/- 12 months. Accordingly, this Court imposed a lower end guideline sentence on both charges *and imposed no further penalty on the remaining charges*. This sentence reflected this Court's assessments of the evidence presented during the trial, as stated by this Court at the sentencing hearing:

> I have taken a very close look at the presentence report, the guidelines, as well as the circumstances of the crime itself, I sat through the trial. I am going to apply the deadly weapon enhancement. I am going from those guidelines. However, I am not, in this case with this defendant, going to do the statutory max, because I believe that the guidelines are appropriate. The standard guidelines are appropriate for this defendant with the deadly weapon enhancement used as being the guidelines.
> I believe that his age, the nature of the crime, the fact that there were two shooters the way I heard it that there is absolutely no question that there were two shooters and the jury found that to be the case. But at all times the victim, right from the beginning identified Malik, and I do think that Mr. Miles is considered in a much different light that perhaps the guidelines might not be appropriate for Miles, but for Mr. Edwards I believe they are appropriate.[26]

---

[26] N.T. 4/30/2010 at 9-10.

As such, Edwards cannot show that he suffered actual prejudice on account of counsel's failure to file a motion for reconsideration of sentence and, consequently, his claim in the instant petition does not warrant relief.

### iii. Claim of counsel's ineffectiveness for failing to object to Edwards being tried on the charge of Possession of an Instrument of Crime

Edwards' assertion that counsel was ineffective for failing to object to Edwards being tried on the charge of Possession of an Instrument of Crime is meritless and finds no support in the record. While Edwards avers that the Possession of an Instrument of Crime charge was withdrawn at the preliminary hearing, the record belies this averment. The transcript from the preliminary hearing provides the following:

> **THE COURT**: What about the possession charge?
> **DISTRICT ATTORNEY**: I am not worried about it, Your Honor. I'll withdraw it.
> **THE COURT**: All right then. Malik Miles and Dontey Edwards, this Court finds that a prima fascie case has been made out against you on all charges except for possession. You're held for court to be at the Criminal Justice Center—

However, the docket sheet of co-defendant Malik Miles illustrates that, in addition to the charges presented to the jury in the instant case with Edwards, Miles had also been charged with Knowing and Intentional Possession of a Controlled Substance and it was this "possession charge" against Miles that was withdrawn at the preliminary hearing. As such, Edwards claim lacks merit and must be dismissed.

### iv. Claim of counsel's ineffectiveness for failing to object to the Commonwealth amending the attempted murder charge

Edwards' assertion that counsel was ineffective for failing to object to the Commonwealth's amendment of the Attempted Murder charge is also meritless and similarly finds no support in the record.[27] Prior to trial, the district attorney sought an amendment to the bills of *co-defendant Malik Miles* to include the charge of Attempted Murder that had been erroneously omitted following the preliminary hearing. This amendment was entirely proper; however, it is not relevant to the instant petition because it was solely related to the case of co-defendant Miles. Accordingly, Edwards' claim warrants no relief.

### B. Ineffectiveness claims against appellate counsel

### i. Claim of counsel's ineffectiveness for causing two issues to be deemed waived by the Superior Court on direct appeal

In his petition, Edwards asserts that counsel caused two issues to be deemed waived on direct appeal. The first issue was the Commonwealth's alleged failure to notify Edwards of its intent to pursue a theory of accomplice liability and the second issue was this Court's alleged addition of the accomplice charge in its instructions to the jury. While counsel's failure to properly raise these issues in the 1925(b) statement resulted in the issues being waived, the issues themselves lack merit and would not have been meritorious on appeal and, as such, Edwards' claim does not warrant relief.

Edwards' claim related to the notification of the theory of accomplice liability is wholly unsupported by the record. While Edwards was not specifically charged with

---

[27] This Court notes that although this issue was addressed on direct appeal, further review of the record shows that counsel's objection at trial was not made on behalf of both defendants, as the Commonwealth did not need to amend Edwards' bills of information.

being an accomplice, this Court was not precluded from giving the jury an instruction on accomplice liability. The Supreme Court of Pennsylvania has held that a defendant may be convicted as an accomplice even though he was only charged as a principal.[28] The Court explained that "[a]s long as the defendant is put on notice that the Commonwealth may pursue theories of liability that link the defendant and another in commission of crimes, the defendant cannot claim that the Commonwealth's pursuit of such a theory surprised and prejudiced the defendant."[29] In the instant case, Edwards and his co-defendant *were charged* with Conspiracy in the case and thus, Edwards had more than adequate notice that the Commonwealth might pursue a theory of liability linking him with another in the commission of the crimes. While accomplice liability is not the same as conspiratorial liability, the requirements for establishing guilt via accomplice liability coincide with the requirements of establishing guilt via conspiratorial liability.[30] Accordingly, Edwards' claim, even if not waived, would not have been meritorious on direct appeal.

Edwards' claim related to this Court's alleged addition of the accomplice charge in its instructions to the jury also finds no support in the record. This Court previously addressed this claim in its April 28, 2011 Opinion on direct appeal, stating:

> Edwards claims that this court introduced a new charge to the jury while addressing the jury's question about the court's instruction on conspiracy. This claim has no merit. On February 22, 2010, the jury submitted the following question:
>> Is the criminal conspiracy charge related to a certain criminal act, (i.e., attempted murder) or just in general? Can we see the charge or definition for criminal conspiracy?[31]

---

[28] *Com. v. Spotz*, 716 A.2d 580 (Pa. 1988).
[29] *Id.*
[30] *Compare* 18 Pa.C.S. §306(c) (defining accomplice liability) *and* 18 Pa.C.S. § 903 (defining crime of conspiracy).
[31] N.T. 2/22/2010 at 81:23-25; 82:1-2.

In accordance with the bill of information on which Edwards was arraigned, this court established for counsel that it would re-read the charges against Edwards as well as re-read the instruction on liability for the conduct of another person or persons. This court formulated the exact response to be given to the jury, and in the process of doing so, this court stated "attempted murder in the first degree" numerous times. No objection to this phrase was made by any party until after this court had given the following response to the jury:

> The defendants in this case, Malik Miles and Dontey Edwards, are on trial before you charged with attempted murder in the first degree, aggravated assault, criminal conspiracy to commit assault, carrying a firearm without a license, possession of instrument of crime with the intent to employ it criminally, and recklessly endangering another person. Now, there are two basic ways a defendant may be criminally responsible for the conduct committed by another person or persons. [. . .][32]

Regardless of the objection, Edwards suffered no prejudice on account of the phrase "attempted murder in the first degree." The Advisory Committee Note for Pennsylvania Suggested Standard Criminal Jury Instruction 12.901A.1 states:

> The courts have decided that the only degree of murder that may be subject to an attempt charge is murder in the first degree. A defendant must specifically intend that death result for an attempted homicide to be complete. The death in lesser grades of murder may occur as an unintended result of otherwise criminal conduct; it is, thus, logically impossible for one to be able to *attempt* to commit second- or third-degree murder.[33]

Therefore, this court's reference to "first degree" was not an additional charge against Edwards nor did it cause him prejudice at trial.

Accordingly, Edwards' claim, even if not waived, would not have been meritorious on direct appeal.

---

[32] N.T. 2/22/2010 at 86:1-11.

[33] Pa. SSJI (Crim) 12.901A.1 (citing *Com. v. Geathers*, 847 A.2d 730 (Pa.Super. 2004); *Com. v. Clinger*, 833 A.2d 792, 796 (Pa.Super. 2003); *Com. v. Williams*, 730 A.2d 507 (Pa.Super. 1999); *Com. v. Griffin*, 456 A.2d 171 (Pa.Super. 1983)).

<u>ii. Claim of counsel's ineffectiveness for failing to challenge this Court's denial of the request for a mistrial on direct appeal</u>

Edwards' final assertion is that his counsel was ineffective for failing to raise the issue of this Court denying his request for a mistrial based upon the prosecutor's remarks during closing arguments that he "had a gun and shot the victim" and that "the shooting was over drugs."[34] While Edwards has failed to properly present this claim with direct references to the transcript, as the closing arguments were not transcribed, this Court will address the claim based upon the alleged remarks contained in the Amended Petition. In *Commonwealth v. Judy*,[35] the Pennsylvania Superior Court opined that:

> [i]t is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict."[36]

The Court further stated that "comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing."[37]

In the instant case, the evidence presented at trial through the testimony of Eldridge Wesley and Michael Walker established that:

> [o]n December 31, 2008, in the early afternoon, Eldridge Wesley ("Wesley") was outside with his cousin, Michael Walker ("Walker"), on the 1300 block of West Wishart Street. Malik Miles ("Miles") yelled at Wesley

---

[34] January 1, 2015 Amended Petition, page 16.

[35] 978 A.2d 1015 (Pa. Super. 2009).

[36] *Id.* at 1020 (citing *Com. v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008)).

[37] *Com. v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009) (citing *Com. v. Chmiel*, 889 A.2d 501, 544 (Pa. 2005)).

from down the street and, in response, Wesley began to approach Miles. As the two men began to talk, Wesley told Walker to walk down the street, away from where he and Miles were standing, and Walker complied. Miles and Wesley proceeded to get into a "heated argument" over who was allowed to be out on that particular block selling drugs.[38] While Miles and Wesley were arguing, Dontey Edwards ("Edwards") was standing near Miles, but did not say anything to Wesley. In an attempt to end the conflict, Wesley "flagged" Miles and began walking away.[39] As he looked back over his shoulder, Wesley saw Miles pull a black handgun from his pocket; Edwards had a black and chrome gun in his hand. Both Miles and Edwards began to shoot at Wesley. As Wesley began to run, he was shot in the leg and fell to the ground. Wesley kept moving on the ground, trying to seek cover, and was shot numerous times throughout his legs and abdomen. As Walker heard the shots, he saw Edwards begin to shoot at him and he ran away from the direction of the gunfire. Walker then ran toward Wesley when he saw him lying in the street and Wesley stated "Malik shot me" before losing consciousness.[40]

This evidence more than supports the prosecutor's alleged remarks that Edwards "had a gun and shot the victim" and that "the shooting was over drugs." As such, this Court's denial of counsel's request for a mistrial was entirely proper and would not have been a meritorious claim on direct appeal; consequently, Edwards' claim of ineffectiveness must fail.

## CONCLUSION

Based upon this Court's independent review of the record, the petition, the Amended Petition, and the Commonwealth's Motion to Dismiss, this Court concludes that Edwards' claims of ineffective assistance of counsel lack merit.

_____
Carpenter, J.

---

[38] N.T. 2/16/2010 at 146:1-4.
[39] N.T. 2/16/2010 at 146:4-5; 152:6-9.
[40] See April 28, 2011 Opinion.